**William WADEWITZ and the City of Waco, Texas, Petitioners,**

**v.**

**Dallas MONTGOMERY and Michelle Montgomery, Respondents.**

No. 96–0245.

Supreme Court of Texas.

Argued Oct. 24, 1996.

Decided July 9, 1997.

Rehearing Overruled Oct. 2, 1997.

Steve L. Moody, Keith C. Cameron, Waco, for Petitioners.

Jack F. Holmes, Temple, for Respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, CORNYN, BAKER and ABBOTT, Justices, join.

The issue here is whether a police officer responding to an emergency call conclusively established that he acted in good faith entitling him to the official immunity defense. On an interlocutory appeal from the trial court's denial of summary judgment, the court of appeals held that he did not. For the reasons explained below, we affirm the judgment of the court of appeals.

### I.

While investigating a burglary at an insurance office at the corner of North Valley Mills Drive and Greer Drive in Waco, Officer William Wadewitz was dispatched to assist another officer on a theft in progress. Wadewitz proceeded on an emergency basis, using his siren, lights, and air horn.

North Valley Mills Drive is a seven-lane road, with three lanes running east and three lanes running west, separated by a central left turn lane. From Greer, Wadewitz tried to make a left turn into an eastbound lane of North Valley Mills by crossing all three westbound lanes of North Valley Mills. A large truck had stopped in the middle westbound lane, blocking Wadewitz's view of the inside westbound lane. As Wadewitz entered the inside westbound lane, his car collided with the Montgomerys' oncoming car.

The Montgomerys sued Wadewitz and the City of Waco for personal injuries and property damage caused by the accident, alleging negligence and gross negligence. Wadewitz and the City moved for summary judgment on Wadewitz's official immunity defense and the City's sovereign immunity defense. After the trial court denied their motion, Wadewitz and the City appealed to the court of appeals under section 51.014(5) of the Civil Practice and Remedies Code. *See City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex.1995). With one justice dissenting, the court of appeals affirmed the denial of summary judgment. Wadewitz and the City appealed to this Court by application for writ of error. *See* TEX. GOV'T CODE §§ 22.001(a)(1), 22.225(c).

### II.

Official immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883

S.W.2d 650, 653 (Tex.1994). A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Id.* The Montgomerys do not contest that Wadewitz acted within the scope of his authority or that his actions were discretionary. Thus, the issue is whether Wadewitz's summary judgment evidence conclusively establishes the "good faith" element of the official immunity defense.

■ We determined in *Chambers* that a court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. 883 S.W.2d at 656. In *Chambers,* several officers claimed official immunity for their decision to continue the high-speed pursuit of a motorcyclist, which allegedly caused the fleeing suspect to crash, injuring a passenger on the motorcycle. *Id.* at 652. We held that in a pursuit case, an officer acts in good faith if a reasonably prudent officer under the same or similar circumstances could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing (rather than terminating) the pursuit. *Id.* at 656.

■ To establish good faith, Wadewitz relied chiefly on his own affidavit and an expert witness affidavit by James F. Smith. Wadewitz's affidavit described the circumstances in which he received the dispatcher's call, his belief that he was called to "something in the nature of a purse snatching," his belief that the other unit dispatched to the same event would reach the scene first, the routes he considered, and his reasons for selecting the route across North Valley Mills. Wadewitz explained that he proceeded on an emergency basis "[i]n order to reduce the risk of possible injury to the other officer by virtue of his early arrival at the scene, to any suspects who might be present, and to any other persons at the scene." Smith's affidavit stated that based on his review of Wadewitz's affidavit testimony and other summary judgment evidence, he had the opinion that

    [g]iven the nature of the call to which Officer Wadewitz was dispatched, his loca-

tion with relation to the call, and his perception of the location of the primary unit responding to the call ... a reasonably prudent officer under the same circumstances could have chosen the route selected by Officer Wadewitz and could have elected to proceed on an emergency basis.

Wadewitz also argued that the Montgomerys' own expert testimony established good faith because their expert agreed that an officer could have decided in good faith to make an emergency response and to take the same route as Wadewitz.

In response, the Montgomerys directed the trial court's attention to Wadewitz's deposition testimony that he could not see the inside lane of North Valley Mills because of a blind spot, that the City of Waco had disciplined Wadewitz for his lack of judgment in attempting to cross the blind spot, and that at the time he did not weigh the risk of harm in crossing a lane he could not see.' The Montgomerys also offered deposition testimony by their expert, Dan Ramsey, that "under no circumstances" should an officer enter a lane of traffic obscured in the manner Wadewitz described. Finally, the Montgomerys relied on Ramsey's affidavit stating that "no reasonably prudent officer under the same or similar circumstances, could have believed that entering the inside lane when he could not see any possible traffic, outweighed the clear risk of harm to the public in entering that lane when he did."

■ An expert's testimony will support summary judgment only if it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted" TEX.R. CIV. P. 166a(c). Conclusory statements by an expert are insufficient to support or defeat summary judgment. *See Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991); *see also Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Thus, an expert witness's conclusory statement that a reasonable officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment. In-

stead, expert testimony on good faith must address what a reasonable officer *could have believed* under the circumstances, *see Chambers,* 883 S.W.2d at 656–57, and must be substantiated with reference to each aspect of the *Chambers* balancing test.[1]

Under *Chambers,* good faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. *See Id.* at 656. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

Wadewitz's summary judgment evidence does not adequately substantiate his and his expert's conclusions about the existence of good faith. Although Wadewitz's expert based his conclusion on Wadewitz's testimony about the nature of the dispatch call, the circumstances that made it necessary for him to quickly reach the scene, and the viability of the alternate routes Wadewitz could have taken, Wadewitz's summary judgment evidence does not address the degree, likelihood, and obviousness of the risks created by Wadewitz's actions. Without taking both sides of the *Chambers* good faith balancing

test into account, neither Wadewitz nor his expert witness had a suitable basis for concluding that a reasonable officer in Wadewitz's position could or could not have believed that Wadewitz's actions were justified. Therefore, the evidence does not conclusively establish that Wadewitz acted in good faith. *See Chambers,* 883 S.W.2d at 656.

### III.

The City argues that the Montgomerys' claims fall outside the statutory waiver of sovereign immunity for claims arising from the operation of a motor vehicle because Wadewitz's official immunity defense protects Wadewitz from personal liability for the accident. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995). The court of appeals did not reach the City's sovereign immunity defense. 914 S.W.2d at 245. Because the City bases its sovereign immunity defense on Wadewitz's defense of official immunity, we need not decide whether the trial court should have granted summary judgment for the City.

### IV.

Today, we apply the *Chambers* good faith balancing test in the context of an emergency response case. Because Wadewitz and the City did not provide conclusive evidence of Wadewitz's good faith under the *Chambers* standard, we conclude that the trial court correctly denied summary judgment on Wadewitz's official immunity defense based on the evidence currently in the summary judgment record. Therefore, without approving the court of appeals' analysis, we affirm the judgment of the court of appeals and remand this suit to the trial court for further proceedings consistent with this opinion.

ENOCH, Justice, joined by HECHT and OWEN, Justices, dissenting.

I agree with the Court that on the issue of official immunity, a party's summary judgment evidence must address both the need to which an officer responds and the risks of an

---

1. As we explained in *Chambers,* the good faith standard is not equivalent to a general negligence test, which addresses what a reasonable person *would have done,* rather than what a reasonable officer *could have believed. Chambers,* 883 S.W.2d at 661 n. 5. Evidence of negligence alone will not controvert competent evidence of good faith.

officer's course of action. *See* 914 S.W.2d at 243 However, unlike the Court, and for reasons I express below, I would hold that Officer Wadewitz was entitled to summary judgment because he conclusively established that he acted in good faith.

I agree that *Chambers* guides our decision. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994). On the other hand, the Court glosses over an important distinction between *Chambers* and this case which helps illuminate the good faith element of the affirmative defense of official immunity. It is significant that Wadewitz was responding to a call at a fixed location. Why is this of note? Because when an officer receives instructions to proceed to a call at a fixed location, she must make but one decision—how to respond.

*Chambers* involved pursuit of a suspect. Although a police officer makes an initial decision to pursue, that officer does not know where the chase will lead. Consequently, the officer cannot evaluate all the risks of the pursuit at the moment it begins. Instead, as the circumstances evolve, the officer must make another decision—whether to continue the pursuit. *See Chambers*, 883 S.W.2d at 656 (good faith inquiry weighs need to immediately apprehend suspect against risk of *continuing* pursuit).

In responding to a call at a fixed location, however, an officer knows precisely where he is going. In planning the route to the location, the officer can assess the risks of proceeding on an emergency basis. Such risks may include, among other things, the presence of traffic signals, school zones, and pedestrians, as well as the quantity of traffic at that specific time of day. Another risk that must be factored into the officer's decision is the fact that civilian drivers don't always hear or see the approach of emergency vehicles. In determining whether an officer acted in good faith in responding to a call at a fixed location we must examine his conduct at the moment he decides to proceed. We then evaluate whether a reasonably prudent officer could have proceeded to the call on an emergency basis by the route the officer chose, considering the nature of the call.

This standard advances the policy we have articulated for the defense of official immunity:

> the injustice ... of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; [and] the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

*Chambers*, 883 S.W.2d at 656 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974)). Our focus must be on the officer's decision as she initiated her response rather than on each discrete circumstance that confronts her at each moment of her course of action. To second-guess the officer along each freeze-frame of the route to the scene of the crime would deprive that officer of any meaningful official immunity. *See* 914 S.W.2d 239, 246 (Vance, J., dissenting). As the frames get closer to the scene of the accident, the risk becomes progressively greater and the officer's conduct appears less reasonable. Eventually, official immunity as a viable public policy protection disappears.

In this case, traffic was stopped at a traffic-signal-controlled intersection because Wadewitz, responding to what he understood to be a purse snatching, was approaching the intersection with lights, siren, and air horn activated. The Montgomerys, according to the summary judgment record, were not alerted to the emergency approach, failed to stop, and collided with Wadewitz. The Montgomerys argue that Wadewitz acted in bad faith because he entered the intersection although his view of the Montgomerys' lane of travel was blocked. They argue that Wadewitz should not have entered the intersection under those circumstances.

Based on these essentially undisputed facts, Wadewitz submitted an expert's affidavit stating that a reasonable police officer could have responded to the call on an emergency basis and could have selected the route Wadewitz chose. In response, the Montgomerys submitted another expert's affidavit stating that no reasonable officer would have proceeded blindly through that intersection

given the risk of harm to the other drivers. The Montgomerys' affidavit deals only with the moment in which Wadewitz entered the intersection. It says nothing about Wadewitz' decision to proceed on an emergency basis and selection of his route. Consequently, Wadewitz presented conclusive evidence of good faith which the Montgomerys failed to controvert.

Wadewitz' decision to respond to a call on an emergency basis using a route he chose to a fixed location was reasonable in light of the risks. This decision does not become unreasonable solely because he unfortunately encountered one of these risks.

Wadewitz established that a reasonably prudent officer could have responded as he did to the call. Accordingly, he was entitled to summary judgment on the basis of official immunity. I would reverse the judgment of the court of appeals and render judgment for Wadewitz.