CITY OF SAN ANTONIO, Petitioner,

v.

Dolores YTUARTE, Respondent.

No. 05–0991.

Supreme Court of Texas.

May 4, 2007.

Rehearing Denied Aug. 24, 2007.

Jack Pasqual, Office of City Attorney, Dan Pozza, San Antonio, for Petitioner.

Cathleen Lockhart, Lockhart Law Firm, P.C., Jeffrey D. Small, Law Office of Jeff Small, San Antonio, for Respondent.

PER CURIAM.

 In this interlocutory appeal from an order denying the City of San Antonio's motion for summary judgment, we consider whether the court of appeals sufficiently analyzed the good faith element of immunity in a police pursuit case. Police officers are entitled to immunity for performing discretionary duties within the scope of their authority provided they act in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). In police pursuit cases, "an officer acts in good faith if a reasonably prudent officer under the same or similar circumstances could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing (rather than terminating) the pursuit." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). The court of appeals affirmed the trial court's denial of summary judgment, concluding that the summary judgment evidence failed to establish immunity as a matter of law because "material facts" underlying the issue of good faith were in dispute. 2005 WL 2216553. The court of appeals, however, did not explain the relevance of these disputed facts as they relate to the issue of good faith, nor did it analyze or explain why the summary judgment evidence failed to meet the good faith standard outlined in *Chambers* and *Wadewitz*. Because the court of appeals did not analyze nor apply the good faith standard, and the summary judgment evidence clearly indicates, without contradiction, that the officers met the good faith standard, we reverse and render judgment.

Because this appeal is from an interlocutory order, we must first consider our own jurisdiction. *See* Tex. Gov't Code § 22.225(b)(3); Tex. Civ. Prac. & Rem.Code § 51.014(a)(8); *State of Texas v. Shumake*, 199 S.W.3d 279, 282 (Tex.2006). Generally we do not have jurisdiction to consider an interlocutory appeal unless an exception applies, such as when an appeals court holds differently from a prior decision of this Court. Tex. Gov't Code § 22.225(c); § 22.001(a)(2). The City asserts such a conflict here, and we agree.

In 2003, the Legislature redefined and broadened our conflicts jurisdiction to eliminate the previous requirement that the rulings in the two cases be "so far upon the same state of facts that the decision of one case [was] necessarily conclusive of the decision in the other." *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex. 1998). "Holds differently" is now defined to include an inconsistency in the respective decisions "that should be clarified to remove unnecessary uncertainty in the law and unfairness to the litigants." Tex. Gov't Code § 22.225(e). Here, the court of appeals' analysis is inconsistent with our decision in *University of Houston v. Clark*, 38 S.W.3d 578, 585–88 (Tex.2000), where we analyzed the question of whether each officer acted in good faith pursuant to the *Wadewitz* factors.

The police pursuit began when San Antonio police spotted a suspect in a stolen Suburban shortly after an aggravated robbery and car jacking were reported at a convenience store. The police pursuit, which lasted less than 20 minutes, included a helicopter and five police cars, one of which was damaged when the suspect rammed it with the stolen Suburban. Near the end of the pursuit Sergeant Kemmy directed the police officers to "back off." Sergeant Kemmy testified in

his deposition that he gave this order to make the suspect believe he had evaded the officers. Shortly thereafter, the suspect lost control of the Suburban, crashed into a parked car and injured a bystander, Dolores Ytuarte.

Ytuarte filed suit, and the City responded by asserting immunity and moving for summary judgment. The City's summary judgment evidence included the officers' deposition testimony and an expert's report, all of which addressed the need to apprehend the suspect and the perceived risks to the public during the police pursuit. Ytuarte's summary judgment evidence included her expert's deposition and affidavit, and the affidavit of a twelve-year-old witness, who disagreed with the police about when the police cars made it to the accident scene.

The trial court denied the City's motion, and the court of appeals affirmed, concluding that the City had not established the officers' good faith as a matter of law. The court of appeals held that there was a material dispute concerning whether any police officer remained in hot pursuit of the suspect when the accident occurred. 2005 WL 2216553, at *4. The police officers uniformly testified that they turned off their lights and sirens and "backed off" the pursuit as Sergeant Kemmy ordered. However, they returned to the pursuit when the officer in the helicopter reported the suspect's accident. This testimony suggests that several seconds elapsed before the first police car reached the accident scene. Ytuarte's witness to the accident, however, testified that she saw police cars, with their lights on but heard no sirens. She further testified that she saw the police cars turn onto the street immediately after the accident, indicating perhaps that the officers had not disengaged from their pursuit. The City's expert disregarded this evidence and concluded that

no police car was in pursuit of the suspect when the accident occurred.

Noting that summary judgment evidence must be viewed in the light most favorable to the non-movant, the court of appeals viewed this factual dispute as support for the trial court's decision to deny the City's motion for summary judgment. *Id.* The relevance of this factual dispute is not immediately apparent, however, because the court did not discuss it in terms of the City's claim that the officers acted in good faith.

■ In *Chambers,* we said that the good faith inquiry must weigh the need to immediately apprehend the suspect against the risk of continuing the pursuit from the perspective of a reasonably prudent officer. *Chambers,* 883 S.W.2d at. 656. In *Wadewitz,* we further explained the need and risk factors, noting that "good faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action based on the officer's perception of the facts at the time of the event." *Wadewitz,* 951 S.W.2d at 467 (emphasis in original). "Need" refers to the urgency of the circumstances requiring police intervention, while "risk" refers to the countervailing public safety concerns. *Id.* Moreover, "to controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts.'" *Chambers,* 883 S.W.2d at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)).

■ Rather than look for evidence of each officer's reasonable perception of need and risk during the pursuit, the court

of appeals focused on whether the officers were in pursuit when the accident occurred, and the "discrepancies" about whether all the summary judgment evidence supported the City's expert's view that the risk factors were minimal. 2005 WL 2216553, at *4. The relevant test, however, is not whether the officers assessed the needs and risks differently, but whether no reasonable prudent officer could have assessed the need and risks as the police officers did in this case. *See Chambers*, 883 S.W.2d at 657 n. 7 ("[t]his standard is analogous to the abuse of discretion standard utilized by an appellate court when reviewing certain trial court rulings: an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question."). The test then is one of "objective legal reasonableness" and the immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 656.

Reviewing the officers' affidavits and depositions reveal that each officer weighed the need to immediately apprehend the suspect and the risk of harm the pursuit posed to the public if they continued the pursuit. Each officer's testimony sufficiently addresses both the need and risk factors and reveals that a reasonable officer, under the same or similar circumstances, could have balanced need and risk as the officers did.

■ In addition to the officers' testimony, both parties also submitted expert opinions. Expert testimony on good faith must address what a reasonable prudent officer could have believed under the circumstances, as well as the need and risk factors. *See Chambers*, 883 S.W.2d at 656–57. The expert reports must consider both the need and risk factors to prove the expert had a suitable basis for concluding that a reasonable prudent officer in the

same position could or could not have believed the actions were justified. *Wadewitz*, 951 S.W.2d at 467.

The City's expert, Albert Rodriguez, opined that the officers acted in good faith. Mr. Rodriguez's opinion was based, among other things, on personal interviews with the officers, their deposition testimony, crime scene reports, and traffic reports. Throughout his deposition, Mr. Rodriguez described how the officers evaluated both the need and risk factors. Mr. Rodriguez noted the necessity of pursuing a suspect that had presented a threat of serious bodily injury to a citizen, and discussed the officers' perception of risks including the traffic, weather conditions, and the seriousness of the crimes involved. Mr. Rodriguez also discussed each officers role in the pursuit and how each officer assessed the need and risk factors.

■ Ytuarte's summary judgment evidence consisted of the testimony of an expert, George Bandin. In his affidavit, Mr. Bandin assessed the risks but never considered the need factor. As pointed out in *Wadewitz*, such a one sided analysis does not provide a basis for concluding whether the officers acted reasonably. *See id.* Thus, the plaintiff's summary judgment evidence is insufficient to controvert the City's proof on good faith. *See Clark*, 38 S.W.3d at 588.

Because the court of appeals failed to apply the *Chambers* and *Wadewitz* analysis when evaluating the summary judgment proof of good faith, and the summary judgment evidence reflects, without contradiction, that the officers acted in good faith, we reverse the court of appeals judgment and, without hearing oral argument, render judgment dismissing the case. TEX. R. APP. P. 59.1.