Affirmed and Memorandum Opinion filed February 23, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00551-CV



Mary Royal and
Ira Royal, Jr., Individually and As Next Friends of Ira Royal, III, Appellants 

v.

Harris County
and HArris County Constable, Appellees 



On Appeal from
the 190th District Court

Harris County, Texas

Trial Court
Cause No. 2007-07453



 

MEMORANDUM OPINION

This is an appeal from a personal-injury case
involving a head-on automobile accident that occurred after a high-speed police
pursuit.  Injured motorists brought negligence claims against the county and
the county constable whose deputy was driving one of the vehicles involved in
the collision.  The trial court granted a plea to the jurisdiction in favor of
the county constable and granted summary judgment in favor of the county.  In
three issues, the motorists contend that the deputy was not protected by
official immunity, the county is not entitled to sovereign immunity, and two
affidavits should not have been considered as summary-judgment evidence.  In a
single cross-issue, the county asserts that the motorists’ expert affidavit is
not competent summary-judgment evidence.  We affirm.

I. 
Factual and Procedural Background

Appellant Mary Royal was involved in a vehicle
collision on the Sam Houston Tollway.  According to the pleadings of Mary Royal,
Ira Royal, Jr., individually and as next friends of Ira Royal, III, (collectively
“the Royals”), Mary was driving east on the tollway when her vehicle was struck
head-on by a vehicle driven by Jowell Hewitt.  The Royals alleged that at the
time of the collision, Hewitt had been traveling in the wrong direction on the
tollway by driving westbound in the eastbound lanes and that Hewitt was being
pursued by Harris County Deputy Angel Garcia, whose vehicle also was involved
in the collision.  Mary sustained a number of injuries and Hewitt was killed in
the collision.  

In their live petition, the Royals asserted that
Mary’s injuries arose from the negligent operation or use of the motor vehicle
driven by Garcia, who was employed by appellee Harris County and the Harris
County Constable’s Office.[1] 
According to the Royals’ pleadings, Garcia was acting within the course and
scope of his employment and in furtherance of the duties required by his
employment.  The Royals alleged that at the time of the pursuit and collision,
Garcia was “performing a ministerial act and/or was not acting in good faith,”
and, consequently, Garcia was not entitled to official immunity.  The Royals
also alleged that sovereign immunity was waived as to Harris County under the
Texas Tort Claims Act.

The Royals claimed that the collision was a direct
and proximate result of negligence by Harris County and its agents, servants
and employees in connection with the use, operation, and control of a motor
vehicle.  The Royals asserted that Harris County and its agents, servants and
employees violated a duty to exercise ordinary care in the operation of a motor
vehicle in the following ways:

·       
Garcia failed to keep a safe distance between the vehicle he was
driving and the vehicle driven by Hewitt;

·       
Garcia was following the vehicle driven by Hewitt too closely;

·       
Garcia was driving the wrong way down a tollway in a high-speed
chase of the vehicle driven by Hewitt;

·       
Garcia was driving at an unsafe speed; and

·       
Garcia was driving the wrong way down a one-way road.

Harris County filed a traditional motion for summary
judgment, asserting that Garcia is protected from personal liability by the
doctrine of official immunity because he acted (1) within the scope of his
employment, (2) by performing as a government employee in a discretionary
function, and (3) in good faith.  Harris County further asserted that because
Garcia was protected by official immunity, Harris County, likewise, was immune from
liability under the Texas Tort Claims Act.  

In their response, the Royals claimed to have raised
genuine issues of material fact as to whether Garcia acted in good faith and
whether Garcia was performing a ministerial duty or a discretionary duty.  The
Royals objected to two affidavits filed by Harris County in support of the summary-judgment
motion.  The trial court granted summary judgment in favor of Harris County. 
The Royals now challenge that ruling on appeal.

II.  Official Immunity

In their first issue, the Royals assert that Harris
County did not carry its burden in establishing Garcia was entitled to official
immunity on the element of good faith.  The Royals also assert, in their third
issue, that the affidavits of Garcia and accident investigation expert John
Denholm should not have been considered as summary-judgment evidence because
the affidavits are conclusory and contradicted.

Official immunity is an affirmative offense that shields
government employees from personal liability for the employee’s performance (1)
of discretionary duties, (2) within the scope of the employee’s authority, (3) undertaken
in good faith.  See Univ. of Houston v. Clark, 38 S.W.3d 578, 580–81
(Tex. 2000); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994).  To obtain summary judgment on the basis of official
immunity, the government employee must prove conclusively each of these
elements.  Clark, 38 S.W.3d at 580.  In determining whether the
summary-judgment proof conclusively establishes an official-immunity defense,
we must consider the existence of disputed facts material to these elements.  See
Telthorster v. Tennell, 92 S.W.3d 457, 461 (Tex. 2002).  The
Royals do not dispute that Harris County satisfied the first two requirements
of official immunity in that they concede that Garcia was performing a
discretionary duty within the scope of his authority.  However, the Royals
claim that genuine issues of material fact remain as to whether Garcia acted in
good faith.  

The Element of Good Faith 

To obtain summary judgment on the element of good
faith in a police-pursuit case, Harris County must prove that a reasonably
prudent officer, under the same or similar circumstances, could have believed
that the need to apprehend the suspect immediately outweighed the clear risk of
harm to the public in continuing the pursuit.  See Clark, 38 S.W.3d at
581; Chambers, 883 S.W.2d at 656.  We apply an objective standard to
determine whether the officer’s conduct was justified based on the information that
he possessed at the time he engaged in the conduct.  See; Wadewitz v.
Montgomery, 951 S.W.2d 464, 467 (Tex. 1997); Chambers, 883 S.W.2d at
656–57.  An officer acts in bad faith only if the officer could not reasonably have
reached the decision in question.  Clark, 38 S.W.3d at 581.

Testimony on good faith must address what a
reasonable officer could have believed under the circumstances, and must be
substantiated with facts showing that the officer assessed both the need to
apprehend the suspect and the risk of harm to the public.  See id.;
Chambers, 883 S.W.2d at 656.  Evidence does not have to prove that it
would have been unreasonable to end the pursuit or that all reasonably prudent
officers would have continued the pursuit.  Clark, 38 S.W.3d at 581. 
Rather, the evidence must prove only that a reasonably prudent officer might
have believed that he should have continued the pursuit.  Id.  Conclusory
statements that a reasonable officer could or could not have taken some action
will neither establish good faith on summary judgment nor raise a fact issue to
defeat summary judgment.  Id.  To controvert summary-judgment proof on
good faith, the nonmovant must do more than show that a reasonably prudent
officer could have decided to stop the pursuit.  Id.  The nonmovant must
establish that no reasonable person in the officer’s position could have thought
that the facts justified the officer’s actions.  Id.; Chambers,
883 S.W.2d at 657.  

To establish conclusive proof of good faith in the
context of a police pursuit, an officer must substantiate his determination
with facts showing that he sufficiently assessed both the need and risks of the
pursuit.  See Clark, 38 S.W.3d at 584–85.  The “need” aspect refers to
urgency of the circumstances requiring the emergency response and is measured
by factors such as the seriousness of the emergency to which the public
official is responding, whether the official’s immediate presence is necessary
to prevent injury or loss of life, and what alternative courses of action, if
any, are available to achieve a comparable result.  See Wadewitz, 951
S.W.2d at 467.  In a police-pursuit scenario, the “need” element requires an
officer to assess the need to apprehend the suspect immediately.  Clark,
38 S.W.3d at 582.  “Risk” refers to the following countervailing public safety
concerns: the nature and severity of harm the public official’s actions could
cause, including injuries to bystanders and the possibility that an accident
would prevent the official from reaching the scene of the emergency; the
likelihood that any harm would occur; and whether any risk of harm would be
clear to a reasonably prudent official.  Wadewitz, 951 S.W.2d at 467. 
Police pursuits require a continued assessment of need and risk because
information known to a public official may change rapidly and offer little time
for deliberation.  Clark, 38, S.W.3d at 582–83.  

 

Movant’s Summary-Judgment Evidence of Good Faith

Harris County attached a number of documents in
support of its motion for summary judgment, including an affidavit of Garcia, a
statement from Deputy Anton Constantine, who was involved in the tollway pursuit,
and an affidavit from Lieutenant John Denholm, an expert trained in accident
investigation.

Affidavit and Statement of Deputies

By affidavit, Garcia explained that he was patrolling
the eastbound lanes of the Sam Houston Tollway when he heard a radio
transmission that a dark-colored truck was traveling the wrong way by driving westbound
in the eastbound, inside lane of the tollway.  In the context of demonstrating
the need to apprehend the driver immediately, Garcia discussed the seriousness
of the situation as a whole.  See id. at 585 (applying seriousness of
situation to establish need).  After he spotted Hewitt’s vehicle, he noted
Hewitt’s high rate of speed.  Garcia suspected that the driver (Hewitt) was
intoxicated based on the manner in which he was operating the vehicle by traveling
in the wrong direction, in the fast lane, at a high rate of speed.  According
to Garcia’s affidavit, intoxicated drivers are unpredictable, dangerous, and
pose a danger on any roadway.  Garcia believed that in the interest of public
safety, Hewitt should be stopped.  Garcia also was aware that Hewitt had caused
major and minor accidents on the tollway before Garcia began his pursuit.  See
id. (involving affidavit addressing need to apprehend fleeing suspect based
on suspect’s involvement in a prior assault and reckless driving).  Garcia
described seeing Hewitt swerve to evade Deputy Constantine, who also was engaging
in a police pursuit in an attempt to stop Hewitt.  See id. (involving affidavit
addressing need to apprehend suspect who attempted to evade other officers).  As
for whether Garcia’s presence was immediately necessary to apprehend Hewitt or
whether alternative courses of action were available, Garcia indicated that at
the time of the chase he did not know the driver’s identity and only “later”
did he learn that the driver was Hewitt.  See id. (providing that a
fleeing suspect’s lack of identity supported the need for the officer’s
response and the officer’s consideration of alternative courses of action). 

In his affidavit, Garcia also assessed the risks
involved in the pursuit.  After Garcia spotted Hewitt’s vehicle and noted its
high rate of speed, Garcia saw Sergeant Cedric Watson, who was traveling east
on the feeder road in his vehicle.  Garcia saw Watson make a u-turn onto the
tollway to follow Hewitt.  Garcia also made a u-turn to assist Watson, noting
that Hewitt’s conduct posed an imminent danger to the public.  Watson called
out details of the chase.  As Hewitt’s vehicle approached State Highway 288,
Garcia weighed the need to remove Hewitt from the moving lane of traffic
against the risk of endangering the public by pursuing Hewitt at high speeds
while traveling against the flow of traffic.  He listed the following factors
as contributing to his decision to continue the pursuit:  

·       
It was late on a Sunday night. 

·       
There was very little other traffic on the road. 

·       
He maintained good visibility of Hewitt and the entire roadway. 

·       
The roadway was dry. 

·       
The weather was clear. 

·       
The area had good artificial lighting. 

Garcia continued the pursuit
in an attempt to prevent harm that he believed Hewitt’s erratic, high-speed
driving could cause.  In considering facts such as the time of day, traffic,
and weather and road conditions, Garcia demonstrated in his affidavit that he
assessed the specific circumstances that affected the risk.  See id. at 586. 
Although Garcia did not specifically mention the risk of his vehicle colliding
with a third-party vehicle, this fact does not mean he did not assess that
risk.  See id.  That risk is present, to some degree, in every police
pursuit.  See id.  

Garcia admitted that he attempted to maintain a safe
distance of 100–150 feet behind Hewitt, the farthest he could be in order to
keep Hewitt in his sight.  Garcia admitted that he was 40–50 feet away from
Hewitt’s vehicle when Hewitt’s vehicle collided head-on with Mary’s vehicle. 
Garcia attempted to brake and maneuver between the collision of Hewitt’s
vehicle and Mary’s vehicle, but Garcia’s vehicle struck Mary’s vehicle.  When Garcia’s
vehicle came to rest, Garcia positioned it to block the accident scene from oncoming
traffic.

Garcia noted that during the pursuit, he was
constantly weighing the need to stop Hewitt against the risks involved.  He
cited the dry roadway, good visibility, and very minimal traffic as factors
that presented a relatively low risk to the public compared with the great need
to stop Hewitt and remove Hewitt from the road.

Although the Royals claim that Garcia’s affidavit was
conclusory, the statements in Garcia’s affidavit were substantiated with facts
showing that he sufficiently assessed both the need to apprehend the suspect
and the risk of harm to the public.  See Clark, 38 S.W.3d at 581. 
In his affidavit, Garcia addressed the need to stop Hewitt based on the
seriousness of the situation as a whole; he recounted how he believed Hewitt,
whose identity was then unknown to Garcia, was an intoxicated driver traveling at
high speeds in the wrong direction on a toll road and who posed a threat to
public safety.  See id. at 585.  Garcia indicated that he believed the
road conditions, weather, time of night, lighting, and traffic conditions
supported little risk.  See id. at 586.  

In his affidavit, Garcia established that he acted in
good faith: Garcia considered facts upon which a reasonably prudent officer in
the same or similar circumstances could have believed that the need to pursue
Hewitt outweighed the risks that the pursuit posed to the public.  See id.   Deputy
Constantine’s statement similarly supports the chain of events.  According to
Constantine, two other officers pursued Hewitt by traveling westbound in the
eastbound, “speed” lane at a high rate of speed.

The Affidavit of the Accident Investigation Expert

Harris County also submitted the affidavit of
Lieutenant John Denholm, an officer with the Sherriff’s department trained in
accident investigations who offered expert testimony.  An expert’s testimony
will support summary judgment only if it is “clear, positive and direct,
otherwise, credible, and free from contradictions and inconsistencies, and
could have been readily controverted.”  Tex.
R. Civ. P. 166a(c); Wadewitz, 951 S.W.2d at 466.  Expert testimony
on good faith must address what a reasonably prudent officer could have
believed under the circumstances.  Wadewitz, 951 S.W.2d at 466–67.  The
expert report must be substantiated by facts supporting both the “need” and “risk”
factors to prove the expert had a suitable basis for concluding that a
reasonably prudent officer in the same position could or could not have
believed the actions were justified.  Id.

Denholm opined that Garcia acted in good faith.  He
based his opinion on Garcia’s affidavit, Deputy Constantine’s statement, a
statement by Sergeant Washington, the crash report and detail report, and the
Royals’ live pleadings.  Denholm addressed the seriousness of the situation
warranting the need to apprehend Hewitt.  See Clark, 38 S.W.3d at 585.  Specifically,
Denholm opined that an emergency situation was created by Hewitt’s speeding
while traveling in the wrong direction.  Denholm reasoned that the situation
warranted the need for law enforcement officers to reach and stop Hewitt as
soon as possible.  Denholm indicated that, based on his experience and
training, it was reasonable to assume that a person driving as Hewitt did could
be intoxicated; and Denholm noted that intoxicated drivers pose a serious
threat to public safety.  Additionally, Denholm opined that whether a driver is
sober or intoxicated, a driver who is speeding the wrong way down a major
thoroughfare could cause accidents, such as the two accidents Hewitt had caused
at the East toll plaza, which increased the potential of harm to civilians and
officers.  Denholm also noted that the toll road serves as a major artery to
other busier highways and that if Hewitt were not apprehended, he would have
entered the other major thoroughfares and likely caused a life-threatening collision. 
In addressing the risks involved, Denholm noted that the crash report indicated
that the tollway was well-lit at night and provided good visibility, and that
the road conditions were dry.  See id. at 586 (assessing such facts as
the time of day, traffic, and weather and road conditions demonstrated that
officer assessed the specific circumstances that were present that affected the
risk).  

Denholm described how Garcia clearly evaluated the “need”
and “risk” factors, delineating the following factors he believed Garcia
weighed:  

·       
Hewitt’s driving posed a threat to public safety requiring
removal from the road as quickly as possible; 

·       
Garcia kept Hewitt in his sight the entire time; 

·       
Watson called out the chase and also joined the pursuit against
the flow of traffic; 

·       
Garcia attempted to maintain a safe distance of 100 feet from
Hewitt; 

·       
Garcia was careful to observe the road for traffic and considered
other traffic in his decision to continue the pursuit.  

 

Denholm lists the following
conditions as contributing to Garcia’s analysis in weighing the risks:  the
time of night on a Sunday, very little other traffic, good visibility, dry road
conditions, and clear weather.  Denholm opined that Garcia was acting in good
faith and that a reasonably prudent officer, under the same or similar
circumstances, could have believed the need to reach the scene by traveling the
wrong way on a freeway with very little traffic outweighed the risk of harm to
the public resulting from that course of action.

Although the Royals contend that Denholm’s affidavit
is conclusory, the statements in Denholm’s affidavit are substantiated with
facts showing his belief that Garcia assessed both the need to apprehend the
suspect and the risk of harm to the public.  See, e.g., City
of San Antonio v. Ytuarte, 229 S.W.3d 318, 321 (Tex. 2007).  In his
affidavit, Denholm sufficiently addressed the “need” and the “risk” factors to
support his conclusion that a reasonable officer, under the same or similar circumstances,
could have balanced the need and the risks as Garcia did and elected to
continue the pursuit.  See, e.g., id.  

The Royals also contend that Garcia’s deposition
testimony, submitted in support of their response to Harris County’s motion,
contradicted facts in Denholm’s affidavit and Garcia’s affidavit.  They point
to portions of these affidavits in which Garcia and Denholm opined that Garcia
was “careful to observe the roadway for other traffic” and Garcia’s deposition
testimony that he did not know how many vehicles he passed during the pursuit. 
These facts do not contradict each other.  See Harris County v. Ochoa,
881 S.W.2d 884, 889 (Tex. App.—Houston [14th Dist.] 1994, writ denied)
(involving evidence that did not offer alternative version of facts to
controvert officers’ affidavits).  In response to the Royals’ argument that
Garcia is an interested witness, summary judgment may be based on
uncontroverted testimonial evidence of an interested witness if the evidence is
clear, positive and direct, otherwise credible, and free from contradiction and
inconsistencies, and could have been readily controverted.  Tex. R. Civ. P. 166a(c); see Ochoa,
881 S.W.2d at 887.  

The evidence submitted by Harris County includes proof
of facts that a reasonably prudent officer in the same or similar circumstances
could have believed that the need to pursue Hewitt outweighed the risk to the
public.  See Clark, 38 S.W.3d at 586.  Based on the evidence presented, Harris
County met the summary-judgment burden and conclusively established the element
of good faith.  See Ytuarte, 229 S.W.3d at 321.  The burden therefore
shifted to the Royals, as nonmovants, to show that no reasonable person in the
officer’s position could have thought that the facts justified the officer’s
actions.  See Clark, 38 S.W.3d at 581.

Evidence Submitted by the Non-Movants

In response to Harris County’s motion for summary
judgment, the Royals submitted the following exhibits:  the crash report and
all attachments and supplements as produced by Harris County, Garcia’s
deposition and affidavit, the deposition of investigating officer Sergeant
Michael Hartley, the affidavit of expert Andrew Scott, III, and Harris County’s
written policy on police-pursuit driving. 

In his affidavit, Scott opined as an expert that no
reasonable officer could have assessed the needs and risks in pursuing Hewitt
the wrong way on a major freeway as Garcia did.  Scott based his opinion on various
factors, which we address in the same order as presented in his affidavit.[2]

Scott first refers to two factors: (1) that Garcia
should have been aware from radio transmissions that officers from another
agency already were in pursuit and (2) that Harris County’s policy on pursuit
driving prohibits a pursuit initiated by another agency.  However, an officer’s
good faith is not rebutted by evidence that he violated the law or department
policy in making his response.  See Campbell v. Jones, 153 Tex. 101, 105,
264 S.W.2d 425, 427 (Tex. 1954); Johnson v. Campbell, 142 S.W.3d 592,
596 (Tex. App.—Texarkana 2004, pet. denied).  Furthermore, Garcia testified in
deposition that he was not aware that officers from other agencies were in
pursuit, even though he acknowledged it may be reasonable to make that
assumption from the radio transmission alerting him that officers from that
agency had spotted a “wrong-way” truck on the tollway.  Scott also pointed to
the fact that Houston Police Department officers were stopped in the westbound
lanes immediately following the collision.  This evidence shows that officers
from the Houston Police Department arrived at the scene in the westbound lanes,
and not the eastbound lanes as used by Garcia, Watson, and Constantine.  Evidence
to controvert good faith must do more than merely show that a reasonably
prudent officer could have reached a different decision.  See Chambers,
883 S.W.2d at 657; see also Telthorster, 92 S.W.3d at 465.  

Scott next points to the fact that Garcia suspected
Hewitt of driving while intoxicated, a non-violent offense, and that Garcia
could have checked the license plates on Hewitt’s vehicle to apprehend him at a
later time rather than continue the pursuit.  Later in the affidavit, Scott made
two statements:  that a “suspected drunk driver does not rise to the level of
sufficiently serious offense to warrant” Garcia’s high speed pursuit of Hewitt
against the flow of traffic and that the “risk to the public in not
apprehending a suspected drunk driver pales in comparison to the risk to the
public in pursuing a suspect the wrong way down a major freeway at speeds over
100 miles per hour.”  In this context, Scott does not contemplate the
circumstances presented to Garcia:  that Garcia suspected Hewitt of driving
while intoxicated because Hewitt was traveling a major thoroughfare in the
wrong direction at speeds exceeding 100 miles an hour before Garcia began
pursuit.  See Clark, 38 S.W.3d at 581 (requiring evidence to confront
the same or similar circumstances in assessing an officer’s good faith).  Garcia’s
deposition testimony similarly supports the fact that running Hewitt’s license
plates was not a viable alternative because the owner of the vehicle may not
have been the driver involved in the incident.  Garcia acknowledged in his
affidavit that Hewitt’s identity was unknown at the time of the pursuit.  See
Clark, 38 S.W.3d at 585 (concluding that lack of suspect’s identity
supported the need for the officer’s presence in apprehending a fleeing suspect
who was involved in prior assaults and evaded other officers).  

Scott indicated that no reasonable officer would
continue pursuit at speeds over 100 miles per hour in the wrong way down a
major freeway.  In his affidavit Scott makes no mention that two other officers—Watson
and Constantine—similarly made u-turns and pursued Hewitt against the flow of traffic
at high speeds.  See Clark, 38 S.W.3d at 581 (requiring proof that no
reasonable person in the officer’s position could have believed that that the
facts justified the officer’s actions); see also Telthorster, 92 S.W.3d
at 467 (involving evidence that did not establish that no reasonable
officer, in the same circumstances, could have believed actions were justified). 
Scott also makes reference to the fact, to which Garcia agreed in deposition,
that a fleeing suspect will escalate speed to avoid being apprehended.  However,
it is undisputed that Hewitt was traveling at a high rate of speed and had caused
both a major and a minor accident at the East Plaza Toll Center before Garcia
engaged in the pursuit.  

Scott pointed to the fact that Garcia executed a u-turn
on a major freeway to engage in a high-speed pursuit against the flow of
traffic instead of exiting and pursuing Hewitt in the westbound lanes as the
officers from the Houston Police Department did.  In deposition, Garcia
acknowledged that had he exited and pursued Hewitt by using the westbound
lanes, he would have lost sight of Hewitt because the exits were far apart.  Evidence
to controvert good faith must do more than just show that a reasonably prudent
officer could have reached a different decision.  See Chambers,
883 S.W.2d at 657; see also Telthorster, 92 S.W.3d at 465.  

Scott also points to Harris County’s policy
prohibiting pursuit against the flow of traffic, except in limited
circumstances, and that Garcia could not articulate an instance when such a
pursuit would be permissible.  The policy provides in pertinent part, “At no
time will deputies purse [sic] a vehicle against the normal flow of traffic
except in those cases that involve serious bodily injury or death or the
imminent threat of injury or death.”  Evidence in the record shows that Hewitt
already had caused both a major and a minor accident at the East Plaza Toll Center
and that Garcia was aware of these facts.  Garcia characterized Hewitt’s
driving as an imminent danger to the public.  To the extent that Garcia may
have violated a department policy in his pursuit, an officer’s good faith is
not rebutted by evidence that he violated the law or department policy in
making his response.  See Campbell, 153 Tex. at 105, 264 S.W.2d at 427; Johnson,
142 S.W.3d at 596.  

Scott also makes references to the distance of 50
feet between Garcia’s vehicle and Hewitt’s vehicle just before the collision
and opines that the distance “was likely to escalate” Hewitt’s speed in
fleeing, which posed a greater risk of harm to the public.  Evidence in the
record indicates that Hewitt already was traveling at a high rate of speed
before Garcia began pursuit and that Hewitt’s speed fluctuated between 90 and
105 miles an hour during the pursuit even before Garcia closed the gap between
the vehicles to 50 feet.  Scott also pointed to the crash report indicating
that Garcia failed to control his speed and followed too closely.  Later in his
affidavit, Scott refers to the fact that because Garcia was required to undergo
additional driving training following the incident, Harris County “apparently
concluded that Deputy Garcia acted unreasonably.”  These observations, even if valid,
are insufficient to raise a fact issue on the question of whether Garcia acted
in good faith in the way he pursued Hewitt.  See Johnson, 142 S.W.3d at
596 (involving expert evidence that an officer acted recklessly in entering an
intersection against a red light and driving past stopped traffic at thirty
miles an hour did not raise a fact issue as to good faith).  Evidence that an
officer violated a law or department policy is insufficient to rebut an
officer’s good faith.  Id.  At most, these facts would demonstrate that
Garcia acted negligently, which is not enough to controvert good faith.  See
id.; see also Telthorster, 92 S.W.3d at 465, 467 (noting that test
for good faith does not contemplate what a reasonable person “would have done,”
but rather contemplates what a reasonable person “could have believed”).

Scott next points to traffic conditions which he
asserts weighed against Garcia’s decision to begin pursuit because two to three
vehicles passed him every five minutes and there was a high likelihood of
causing a serious accident.  Conclusory statements that a reasonable officer
could or could not have taken some action do not raise a fact issue to defeat
summary judgment.  See Clark, 38 S.W.3d at 581.  To controvert Harris
County’s summary-judgment evidence, the Royals must do more than show that a
reasonably prudent officer could have reached a different decision.  See
Chambers, 883 S.W.2d at 657.  They must show that no reasonable officer in
Garcia’s position could have believed that the facts justified his conduct.  See
id.  Scott’s affidavit on this point does not indicate that no reasonable
officer in such traffic conditions could have believed the facts justified
Garcia’s conduct.  See Clark, 38 S.W.3d at 587 (involving expert
evidence that did not controvert proof of good faith); see also Telthorster,
92 S.W.3d at 467 (involving expert evidence that did not establish that no
other reasonable officer could have held similar concerns under same
circumstances confronting the defendant officer).

Finally, in his affidavit, Scott points to the fact
that the accident investigation was reassigned from Sergeant Watson to Sergeant
Hartley, and opines that “it is reasonable to conclude that Harris County
needed to have an objective determination of the cause of the accident
involving Mary Royal.”  This evidence does not provide a basis for concluding
whether Garcia acted reasonably.  See Clark, 38 S.W.3d at 587 (providing
that expert evidence was not substantiated with reference to the aspects of the
“need” and “risk” balancing test, and therefore, insufficient to controvert a
defendant’s proof on good faith).

The Royals summary-judgment evidence, at best, raises
only fact issues as to Garcia’s negligence in following too closely and failing
to control his speed.  See Johnson, 142 S.W.3d at 596; see also
Telthorster, 92 S.W.3d at 467.  These matters, however, even if established,
are insufficient to raise a fact issue on the question of whether Garcia acted
in good faith in the way he pursued Hewitt.  See Johnson, 142 S.W.3d at
596.  Harris County provided summary-judgment evidence that Garcia acted in
good faith.  See id.  To defeat that showing, the Royals must have
raised a genuine issue of material fact as to what a reasonable officer could
have believed under the circumstances, and the facts have to be substantiated
with reference to need and risk.  See id.  Indulging every reasonable
inference in favor of the Royals, we conclude that the Royals’ evidence is
insufficient to controvert Harris County’s proof on good faith.  See Ytuarte,
229 S.W.3d at 321; Johnson, 142 S.W.3d at 596.  Therefore, we overrule
the Royals’ first and third issues.  

III.  Sovereign Immunity

            A political
subdivision of the state is not liable for acts or conduct of its officers or
employees unless the entity’s common law immunity is waived by the Texas Tort
Claims Act.  See Tex. Civ. Prac.
& Rem. Code Ann. § 101.021 (Vernon 2005); Chambers, 883
S.W.2d at 658.  Under this statue, a governmental entity’s sovereign immunity
is not waived when its employee is entitled to official immunity.  See City
of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993).  Because Garcia is
protected from personal liability based on official immunity, Harris County,
likewise, is protected under the Texas Tort Claims Act.  See Ochoa, 881
S.W.2d at 890.  Accordingly, Harris County is not liable under the Texas Tort
Claims Act, and therefore, summary judgment in favor of Harris County was
proper.  See id.  We overrule the Royals’ second issue.

Having overruled each of the Royals’ issues on
appeal, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Frost and
Brown and Senior Justice Hudson.*

 









[1]
The record reflects that the trial court granted a plea to the jurisdiction
filed by the Harris County Constable’s Office and ordered a dismissal of this
entity.  The dismissal of that entity is not an issue in this appeal.





[2]
Although Harris County, in a single cross-issue, contends Scott’s affidavit is
conclusory, we disagree and conclude that, in his affidavit, Scott considered
both the “need” and “risk” factors and had a suitable basis for offering his
opinion that no reasonable officer could have believed the needs outweighed the
risks of pursuit.  See Ytuarte, 229 S.W.3d at 321.





* Senior Justice J. Harvey Hudson sitting
by assignment.