Opinion filed December 13,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-12-00086-CV

                                                    __________

 

             TEXAS
DEPARTMENT OF PUBLIC SAFETY, Appellant

 

                                                             V.

 

                                     NICHOLAS
LOPEZ, Appellee



 

                                   On
Appeal from the 118th District Court

 

                                                          Howard
County, Texas

 

                                                      Trial
Court Cause No. 47504



 

                                            M
E M O R A N D U M   O P I N I O N

            The
Texas Department of Public Safety filed this interlocutory appeal from the
trial court’s order denying the DPS’s plea to the jurisdiction.  We reverse and
render.  

            Nicholas
Lopez sued the DPS as a result of a vehicular accident involving Lopez and DPS
Trooper Jared Bratcher.  At the time of the collision, Trooper Bratcher was
responding to an emergency call involving a major accident.  Trooper Bratcher,
with his lights and siren on, entered an intersection and attempted to cross it
while the light facing him was red.  He collided with Lopez.  Lopez alleged in
his petition that Trooper Bratcher acted negligently and with conscious
indifference or reckless disregard for the safety of others.  The DPS filed a
plea to the jurisdiction, asserting that this suit is barred by sovereign
immunity based on either (1) an exception in the Texas Tort Claims Act[1]
(TTCA) that applies to governmental employees responding to an emergency call or
(2) Trooper Bratcher’s official immunity.  The trial court denied the plea to
the jurisdiction.  

            The
DPS challenges that denial in two issues on appeal.  In its first issue, the
DPS contends that the trial court erred in denying its plea to the jurisdiction
because Trooper Bratcher’s actions in responding to a major rollover crash meet
the requirements of the TTCA emergency exception in Section 101.055(2).[2] 
In the second issue, the DPS relies on Section 101.021(1)(B) of the TTCA, arguing
that it is entitled to sovereign immunity because Trooper Bratcher is entitled
to official immunity.  We address the merits of the second issue only as our
holding on that issue is dispositive of this appeal.  See Tex. R. App. P. 47.1.  

            Sovereign
immunity from suit defeats a trial court’s subject-matter jurisdiction and is
properly asserted in a plea to the jurisdiction.  Tex. Dep’t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 225–26 (Tex. 2004).  After a governmental
entity presents evidence that the trial court lacks subject-matter
jurisdiction, the plaintiff must show that there is a disputed material fact
regarding the jurisdictional issue.  Id. at 228.  When the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional
issue, the plea to the jurisdiction is resolved by the trial court as a matter
of law.  Id.  However, if disputed evidence of jurisdictional facts implicates
the merits of the case, resolution by the factfinder may be required.  Id.
at 226–28.  On appeal, a challenge to the trial court’s subject-matter
jurisdiction is reviewed de novo.  Id. at 228.  

            The TTCA
provides for a limited waiver of sovereign immunity, allowing suits to be
brought against governmental units only in certain narrowly defined
circumstances.  Tex. Dep’t of Criminal Justice v. Miller, 51 S.W.3d 583,
587 (Tex. 2001).  Lopez asserts that his claims fall within the waiver of
immunity provided for in Section 101.021(1) of the TTCA. Section 101.021(1)
provides that a governmental unit in this state is liable for:

            (1) property damage, personal
injury, and death proximately caused by the wrongful act or omission or the
negligence of an employee acting within his scope of employment if:

            (A) the property damage,
personal injury, or death arises from the operation or use of a motor-driven
vehicle or motor-driven equipment; and

            (B) the employee would be
personally liable to the claimant according to Texas law.

The DPS does not
dispute that Lopez’s alleged injuries arose from the operation or use of a motor-driven
vehicle, but it does dispute that Trooper Bratcher would be personally liable
to Lopez.  See id. § 101.021(1)(B).  The DPS asserts that, because Trooper
Bratcher is shielded from liability by his official immunity, he would not be
personally liable to Lopez and that, since Trooper Bratcher would not be
personally liable to Lopez, the DPS remains immune.  

            A
government employee has official immunity for discretionary acts performed
within the scope of the employee’s authority as long as the employee acted in
good faith.  Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997); City
of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  The defendant
has the burden to establish the elements of the affirmative defense of official
immunity.  Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000).  The
element of good faith must be assessed upon objective legal reasonableness, not
the employee’s subjective state of mind.  Wadewitz, 951 S.W.2d at 466.  “Evidence
of negligence alone will not controvert competent evidence of good faith.”  Id.
at 467 n.1.  Applying Chambers, the Wadewitz court stated that “good
faith depends on how a reasonably prudent officer could have assessed both the need
to which an officer responds and the risks of the officer’s course of
action, based on the officer’s perception of the facts at the time of the
event.”  Id. at 467.  In this context, “need” is determined by factors
such as the seriousness of the accident to which the officer is responding,
whether the officer’s immediate presence is necessary to prevent injury or loss
of life, and what alternative courses of action, if any, are available to
achieve a comparable result.  The “risk” aspect of good faith refers to
countervailing public safety concerns such as the nature and severity of harm
that the officer’s actions could cause, including injuries to bystanders and
the possibility that an accident would prevent the officer from reaching the
scene of the emergency; the likelihood that any harm would occur; and the
clarity of the risk of harm to a reasonably prudent officer.  Id.  

            Applying
“good faith” as set out in Wadewitz, we hold that a reasonably prudent
officer, assessing both the need and the risks based on Trooper Bratcher’s
perception of the facts at the time of the accident, could have believed that his
actions were justified.  Trooper Bratcher gave the following reasons for the
necessity of his presence at the rollover crash site: the severity of the
crash, which involved one adult and four children and the ejection of at least one
child; the lack of other officers available to respond; the fact that he had
had EMS training and might be needed to assist an injured person; and the fact
that the scene needed to be secured to prevent other traffic accidents and
injuries.  Trooper Bratcher turned on his lights and siren and headed toward
the rollover crash site.  The evidence, which includes video recorded from the
trooper’s vehicle, is undisputed that Trooper Bratcher “cleared and completely
stopped at every intersection” prior to the intersection where he collided with
Lopez.  After investigating the incident, Sergeant Thomas W. Moore III
concluded that the crash was preventable and was caused by Trooper Bratcher
failing to make sure a busy intersection was clear before entering it and also
by Lopez failing to see or hear the lights and siren of Trooper Bratcher’s
patrol car and, thus, failing to yield to the emergency vehicle.  Sergeant
Moore’s investigation revealed that Trooper Bratcher was traveling at about the
speed limit of 45 miles per hour on the service road of FM 700 as he approached
the intersection of US 87/Gregg Street, which was a four-lane highway with a turn
lane in the center; that Trooper Bratcher’s light was red; that he braked and
slowed down to 25–30 miles per hour prior to the intersection; that every
vehicle to the right of the intersection was stopped; that there appeared to be
no traffic moving; that Trooper Bratcher let off the brakes and began to
accelerate through the intersection, entering the intersection at approximately
35 miles per hour; that Trooper Bratcher’s attention was focused on the
vehicles to his right; and that he failed to see Lopez’s vehicle.  Neither
driver took any evasive action prior to impact.  Trooper Bratcher’s vehicle
struck Lopez’s vehicle near the rear axle on the passenger’s side.  The
evidence suggests that a chain link fence or a concrete barricade may have
impeded Trooper Bratcher’s view of Lopez’s vehicle.

            The
risks involved in Trooper Bratcher’s actions concern the nature and severity of
harm that his actions could cause, including injuries to bystanders like Lopez
and the possibility that Trooper Bratcher would be prevented from reaching the
scene of the emergency.  The likelihood that any harm would occur and whether
the risk of harm would be clear to a reasonably prudent officer are also of
concern.  There are obvious risks in disregarding a red light—colliding with
other vehicles and causing injuries.  Sergeant Moore stated that officers “must
expect that not all drivers will yield to emergency vehicles” and that “a
prudent officer should slow down enough or stop and actually observe the entire
intersection” to make sure that it is clear.  Trooper Bratcher slowed prior to
reaching the intersection and thought he had cleared the intersection.  Under
the circumstances as perceived by Trooper Bratcher, a reasonably prudent
officer could have assessed the needs and risks involved and mirrored Trooper
Bratcher’s actions.  

            Although
the evidence suggests that Trooper Bratcher’s actions were negligent, negligence
is not the appropriate standard for determining good faith in an official
immunity case.  To controvert an officer’s proof of good faith, there must be
evidence that does “more than show that a reasonably prudent officer could have
decided to stop”; the evidence must show that “no reasonable person in the
defendant’s position could have thought the facts were such that they justified
defendant’s acts.”  Chambers, 883 S.W.2d at 657.  The court in Chambers
noted that, “if officers of reasonable competence could disagree on this issue,
immunity should be recognized.”  Id. (quoting Malley v. Briggs,
475 U.S. 335, 341 (1986)).  The evidence does not show that no reasonable
person in Trooper Bratcher’s position could have believed his acts were
justified.  See id.; see also City of San Antonio v. Ytuarte, 229
S.W.3d 318 (Tex. 2007); City of Dallas v. Brooks, 349 S.W.3d 219, 231–33
(Tex. App.—Dallas 2011, no pet.); City of San Angelo Fire Dep’t v.
Hudson, 179 S.W.3d 695, 704–06 (Tex. App.—Austin 2005, no pet.); Johnson
v. Campbell, 142 S.W.3d 592 (Tex. App.—Texarkana 2004, pet. denied).  We
conclude that the DPS established that Trooper Bratcher acted in good faith and
that Lopez failed to raise a fact issue regarding Trooper Bratcher’s good
faith.  

            Because
the evidence shows that Trooper Bratcher was performing a discretionary act
within the scope of his authority as a government employee and that he acted in
good faith in doing so, Trooper Bratcher would be entitled to official
immunity.  Accordingly, the DPS is entitled to immunity pursuant to Section
101.021(1)(B), and the trial court erred in not granting the DPS’s plea to the
jurisdiction on this basis.  We sustain the DPS’s second issue.  

The
trial court’s order denying the DPS’s plea to the jurisdiction is reversed, and
we render judgment dismissing the cause for lack of jurisdiction.  

            

 

                                                                                    JIM
R. WRIGHT

                                                                                    CHIEF
JUSTICE

 

December 13,
2012

Panel consists of: Wright, C.J.,

McCall, J., and Willson, J. 









[1]Tex. Civ. Prac. & Rem. Code Ann.
ch. 101 (West 2011 & Supp. 2012) (the Texas Tort Claims Act).

 





[2]Section 101.055 provides in relevant
part: 

This chapter does not apply to a claim arising: 

. . . . 

(2) from the action of an employee while responding to an emergency
call or reacting to an emergency situation if the action is in compliance with
the laws and ordinances applicable to emergency action, or in the absence of
such a law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others.  

We note
also that, by statute, it is permissible for the operator of an emergency
vehicle, while responding to an emergency call, to disregard various traffic
laws.  Tex. Transp. Code Ann. §§
546.001–.002 (West 2011).  Section 546.001(2) specifically provides that an
emergency vehicle may “proceed past a red or stop signal or stop sign, after
slowing as necessary for safe operation.”  In doing so, however, the operator
of the emergency vehicle is not relieved from “the duty to operate the vehicle
with appropriate regard for the safety of all persons” or from “the
consequences of reckless disregard for the safety of others.”  Id. §
546.005; see City of Amarillo v. Martin, 971 S.W.2d 426, 428–31 (Tex. 1998)
(adopting recklessness and rejecting negligence as the standard for imposing
liability).