

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY, | § | No. 08-13-00117-CV |
|  | § | Appeal from |
| Appellant, | § | 41st District Court |
| v. | § | of El Paso County, Texas |
| MERARDO BONILLA, | § | (TC # 2011-DCV10226) |
| Appellee. | § |  |

## **O P I N I O N**

This Texas Tort Claims Act case returns to us with a narrow focus. The remaining question is whether official immunity divests the trial court of jurisdiction over the lawsuit. To answer that question, we focus on whether the Texas Department of Public Safety's (DPS) summary judgment evidence conclusively establishes the "good faith" element for official immunity, and if so, whether the innocent motorist who was injured during a police chase met his responsive burden. Stated in terms of the applicable test, did DPS conclusively show that a reasonable trooper, under the same or similar circumstances, could have believed it necessary to conduct the pursuit as the trooper did here, and if so, did the motorist present some evidence that no reasonable trooper would have pursued that course. We conclude that the appeal turns on our determination of what are the "same or similar circumstances," and that determination is dictated by the standards which govern all summary judgment motions. Based on the summary judgment record here, we affirm the trial court's denial of summary judgment.

**FACTUAL AND PROCEDURAL BACKROUND**

The traffic accident giving rise to this lawsuit occurred on February 19, 2010, at the intersection of Montana and Magruder Streets in El Paso. DPS Trooper Cesar Cruz was traveling westbound on Montana Avenue, which at the point of the accident has three driving lanes running in each direction. Officer Cruz was in a marked DPS vehicle. When he was about a quarter of a mile from the intersection, a pickup truck traveling in the same direction changed lanes cutting the trooper off. The pickup weaved in and out of traffic, cutting off another vehicle. The speed limit on Montana Avenue in that area is 35 m.p.h. and Cruz estimated that the speeding truck was traveling at least 55 m.p.h.[1]

Officer Cruz initially exercised his discretion to delay pulling the pickup over because he believed that there was no safe place to conduct a stop in that area. But when the pickup ran a red light at the Montana and Magruder intersection, Officer Cruz activated his overheard lights and accelerated to effect a traffic stop. As Trooper Cruz crossed the intersection, however, he collided with Merardo Bonilla who was traveling southbound on Magruder. Bonilla was injured and brought this suit against DPS to recover for his injuries.

DPS answered and after some discovery in the case, filed a plea to the jurisdiction and alternative motion for summary judgment which asserted several grounds. Two of the grounds are relevant to this appeal. First, DPS contended that the accident occurred while Trooper Cruz was reacting to an emergency situation. As such, Bonilla was required to prove, but could not according to DPS, that Trooper Cruz acted with conscious indifference or recklessness. TEX.CIV.PRAC.&REM.CODE Ann. § 101.055(2)(West 2011)(requiring conscious indifference or recklessness to waive sovereign immunity when governmental employee is responding to

---

[1] An accident report notes the speed limit was 40 miles per hour at the intersection. Trooper Cruz's affidavit states the speed limit was 35 m.p.h. The discrepancy is immaterial to our resolution of the case.

emergency call or reacting to emergency situation).  Second, DPS contended that Trooper Cruz was protected by official immunity, and as such, it was not vicariously liable for the actions of its immune employee.  The trial court denied the motion, and DPS pursued an interlocutory appeal to this Court.

On first hearing this matter, we affirmed the trial court and in doing so addressed three issues.  *Texas Dept. of Pub. Safety v. Bonilla*, 481 S.W.3d 646 (Tex.App.--El Paso 2014), *rev'd*, 481 S.W.3d 640 (Tex. 2015).  In response to DPS's motion, Bonilla had submitted a traffic investigation report prepared by DPS.  We first held that the trial court did not err in overruling DPS's objections to the traffic investigation report.  *Id*. at 649-52.  The report criticized Trooper Cruz's actions and contradicted some aspects of his version of the accident.  *Id*.  Based on findings from the report, and another interoffice DPS memorandum, we next concluded that there was some evidence of recklessness sufficient to create a fact issue as to DPS's "emergency" response ground for summary judgment.  *Id*. at 654-55.

With regard to official immunity, we noted that DPS carried the burden to show three elements of the affirmative defense:  (1) that Trooper Cruz was performing a discretionary function; (2) that he did so in the course and scope of his duties; and (3) that he acted in good faith.  *Id*. at 655.  Bonilla did not contest the first two elements, and the only question at issue was whether Trooper Cruz was acting in good faith.  *Id*.  DPS had attempted to meet that element with an affidavit signed by Trooper Cruz, his incident report which was incorporated into the affidavit, and excerpts from his deposition.

We held that the "same fact issues that defeat sovereign immunity under the emergency exception likewise defeat derivative immunity."  *Id*. at 655.  Bonilla's evidence showed that "a reasonably prudent police officer could determine" that the necessity to stop the speeding truck was outweighed by risk of causing an accident in proceeding through the intersection.  *Id*. at 655-

3

56. Prior decisional law also required as part of the good faith analysis that a police officer consider alternative methods to pursuit. *E.g. Univ. of Houston v. Clark*, 38 S.W.3d 578, 588-89 (Tex. 2000). We alternatively held that DPS's evidence was insufficient because Trooper Cruz had not expressly discussed and explained why he discounted alternative courses of action to stop the speeding truck. 481 S.W.2d at 656.

On petition for review, the Texas Supreme Court reversed and remanded the case back to us for reconsideration. *Texas Dept. of Pub. Safety v. Bonilla*, 481 S.W.3d 640 (Tex. 2015). The court left untouched our resolution of the emergency response issue, noting there was no meritorious issue for review. *Id.* at 646. DPS had also not challenged our holding regarding the admissibility of DPS's accident investigation report. As for the remaining issue -- official immunity -- the Texas Supreme Court held that we erred in applying the wrong standard for good faith under the official immunity doctrine. *Id.* at 643-44. Rather than focus on whether a reasonably prudent trooper could have made a different decision, we should have considered whether no reasonably prudent trooper could have made the same decision in light of the need and risks. The court also held that DPS's evidence implicitly addressed alternative courses of action. *Id.* at 645. The court remanded the case to us to reconsider the case under the correct legal standard.

### OFFICIAL IMMUNITY AND THE GOOD FAITH STANDARD

A government official enjoys "official immunity" for discretionary actions done in the course and scope of employment, as long as the decisions are made in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). If a government official's actions are protected by official immunity, the employer organization is protected by sovereign immunity when the suit is based on those same official acts. *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex. 1995); *DeWitt v. Harris County*, 904 S.W.2d 650, 651 (Tex. 1995).

4

**The Good Faith Standard**

In police pursuit cases, the test for good faith asks whether a reasonably prudent officer, under the same or similar circumstances, *could have believed* the need for the officer's actions outweighed a clear risk of harm to the public from those actions. *Clark,* 38 S.W.3d at 581; *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 & 467 (Tex. 1997); *Chambers,* 883 S.W.2d at 656. Referred to as the "need-risk" test, the "need' side of the equation refers to the circumstances requiring police intervention. *Wadewitz*, 951 S.W.2d at 467. Those circumstances might include the seriousness of the crime to which the officer is responding, the immediacy of need to prevent injury or loss of life or apprehend a suspect, and the alternative courses of action, if any, which might achieve a comparable result. *Id*. The "risk" side of the equation includes the public safety concern inherent in a police chase, including the risk and consequence of injury to innocent third parties, the likelihood of that harm, and whether that risk would be clear to a reasonably prudent officer. *Id.* The test is one of objective legal reasonableness, and focused on the facts and circumstances presented, rather than the mere conclusions of the participants or an expert witness. *Clark*, 38 S.W.3d at 581; *Wadewitz*, 951 S.W.2d at 467; *Chambers,* 883 S.W.2d at 656. "[C]onclusory statements that a reasonable officer could or could not have taken some action will neither establish good faith on summary judgment nor raise a fact issue to defeat summary judgment." *Clark*, 38 S.W.3d at 581.

If the movant establishes that the officer acted in good faith, the burden shifts to the opposing party to show that no reasonable officer would have made the same decision. *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007); *Chambers*, 883 S.W.2d at 656. In that way the test for good faith differs from a negligence standard where the question turns on what the prototypical reasonable person would have done. *See Chambers*, 883 S.W.2d at 656 n.5. Accordingly, the official immunity question here includes two subparts. First, did DPS initially

meet its burden to demonstrate that Trooper Cruz acted in good faith in deciding to initiate a stop of the pickup, which in turn required him to proceed through a red light at the intersection? Second, if the DPS met its burden, we must decide if Bonilla has presented some evidence which raises a fact issue in response.

### DPS's Evidence of Good Faith

DPS attached to its motion below the affidavit of Trooper Cruz, which in turn incorporates his accident report. It also included excerpts from his deposition. Those proffers inform us that the trooper observed a vehicle speed past and cut him off. The pickup then weaved in and out of traffic, cutting off another vehicle. Trooper Cruz followed and observed the vehicle, foregoing an immediate stop because there was no place to have the pickup pull over. As they approached the intersection at Montana and McGruder, the light evidently cycled from green to red. Trooper Cruz observed the pickup run the red light. He then decided to pursue the vehicle through the intersection. His affidavit contends:

> Before I entered the intersection of Montana and Magruder, I knew that there was moderate traffic, and no pedestrians in the roadway. It was 9:56 a.m. and daylight with no rain and the asphalt roadway was dry. I saw that all traffic was slowing at the intersection. I believe there was no vehicle in front of me in my lane at the time I entered the intersection because I did not have to move lanes to proceed into intersection.

Another section of his affidavit contends:

> I cautiously proceeded into the intersection. I slowed and I was traveling approximately 35 m.p.h. into the intersection. This was not a high speed based on the totality of the circumstances. I saw that all traffic was stopped, including the traffic to my left who faced a green light. I looked to my right and there was no traffic there; therefore, no vehicle was entering the intersection from my right. Nothing was obstructing my view and I did not see the Plaintiffs vehicle at the intersection to my right.

Trooper Cruz had just activated his emergency overhead lights, but had not yet turned on his siren when he collided with Bonilla who was coming from the right on Magruder.

6

## Bonilla' Responsive Evidence

Bonilla's response included the report from the DPS's investigation into this accident, which in turn was based in part on data from both vehicles' Event Data Recorders ("EDRs"), or "black boxes." The data from Trooper Cruz's unit retained only the last 2.5 seconds of data before the impact and recorded data in half second increments. For the first half second increment, the Trooper's vehicle was traveling 39 m.p.h. and was at 100% full throttle. The vehicle continued at 100% throttle until the last half second interval, when it dropped to 77% throttle.

The DPS investigators concluded that Cruz's vehicle was at 100% throttle when it was 164.95 feet from the point of impact. The point of impact was 65 feet from the stop line at the intersection. From this, the DPS accident reconstruction team surmised that Trooper Cruz was at 100% throttle 99.9 feet *before* the stop line of the intersection. He then had accelerated from 39 to 49 miles per hour and did not reduce the throttle (to 77%) until one half second prior to impact.[2]

This data conflicts with Trooper Cruz statement that he yielded at the stop line before proceeding through the intersection. The report also notes the existence of a building on the corner of Montana and Magruder which created a "sight restriction for [Trooper Cruz] to fully observe all vehicles at the intersection he was approaching." The building was situated so as to block the view to Trooper Cruz's right, which was the direction from which Bonilla was traveling. Based on its investigation, the report concluded that Trooper Cruz failed to operate his vehicle with "due care" as required by the Texas Transportation Code. *See* TEX. TRANSP. CODE

---

[2] By contrast, Mr. Bonilla's EDR showed the he was stopped with his foot on the brake until one second prior to the impact. He was going no faster than 11 miles per hour at impact. There was no dash-cam video of the accident itself, or the actions of the pick-up, because Trooper Cruz had -- contrary to DPS policy -- turned his dash-cam off when he had earlier received a personal phone call on his cell phone.

ANN. § 546.005 (West 2011)(authorized emergency vehicle are not exempted from duty to operate with appropriate regard for the safety of all persons, nor exempted from the consequences of reckless disregard for the safety of others).[3]

## Did the Texas Supreme Court Already Resolve the Initial Burden Question?

In supplemental briefing to this court, DPS contends that the Texas Supreme Court has already concluded that "all the evidence supports official immunity." It bases this contention on one passage and one footnote from the opinion. The passage is a paragraph that begins with this sentence: "To establish good faith in this case, DPS relied almost exclusively on the trooper's account of the incident, as reflected in his affidavit, deposition testimony, and incident report." 481 S.W.3d at 644. The rest of the paragraph summarizes DPS's good faith evidence. DPS focuses on the introductory clause ("[t]o establish good faith in this case") and reads it as the high court's affirmation that DPS did in fact establish good faith. We read it, however, as an introductory clause explaining the context of what follows. If the Texas Supreme Court meant that the record already establishes good faith, it would have said so, and limited the remand to the singular question of whether Bonilla met his burden of showing that no reasonable officer could have believed that pursuit was appropriate.[4]

DPS also directs us to footnote 23 of the opinion. Before the Texas Supreme Court, Bonilla argued that even if this court has applied the wrong standard, the discrepancies in Trooper Cruz's version of events meant DPS had not established good faith. He argued that under Rule 166a, summary judgment evidence from an interested witness must be "clear,

---

[3] In a separate report, a corporal with the DPS concluded: "It is my opinion that Trooper Cesar Cruz was traveling at an unsafe speed approaching a red light at an intersection. Trooper Cruz did not use the emergency vehicle's siren to warn persons approaching the intersection. Due to sight restriction and the high volume of traffic in that intersection, Trooper Cruz was traveling too fast to have avoided the crash."

[4] For instance, the sentence that DPS focuses on could have been written as "DPS established good faith in this case by showing…" rather than "To establish good faith in this case DPS relied almost exclusively on …"

positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R.CIV.P.166a (c). Bonilla then urged that the DPS's evidence was contradicted, in part by the inconsistencies pointed out in the DPS investigation. We alluded to the same issue in our first opinion. 481 S.W.3d at 656. He additionally contended that Trooper Cruz's testimony was not readily controvertible and should not be considered as competent summary judgment evidence.

The Texas Supreme Court dealt with this issue in a footnote. After referencing Officer Cruz' affidavit, the accident report, and deposition, the footnote stated: "Bonilla disputes the trooper's version of events in several material respects, but Bonilla's controverting evidence is not germane to the competence of DPS's evidence in the first instance." *Id.* at 481 S.W.3d at 644, n.23. DPS contends this footnote signifies the high court's view that the DPS investigation report does no more than show some other officer's perception of the events, rather than overcome DPS's initial evidence supporting good faith. In the context of the arguments that were advanced before the supreme court, we interpret the footnote to mean that Trooper Cruz's affidavit was competent summary proof that should be considered as would any summary judgment evidence. The footnote addresses the "competence" of the evidence, which parallel's Rule 166a(f)'s requirement that an affidavit must "show affirmatively that the affiant is *competent* to testify to the matters stated therein." [Emphasis added]. *Id*. Had the Texas Supreme Court meant that none of the conflicting evidence which Bonilla brought forward plays into the good faith test, it could have clearly said so. We therefore see our task as determining first whether DPS met its initial burden under the summary judgment standard of showing that a reasonable officer, under the same or similar circumstances, could have believed pursuit across the intersection was warranted. What those same circumstances are, is however, largely influenced by the summary judgment standard of review.

9

**Standard of Review**

A successful movant for summary judgment must negate the presence of all material issues of fact and establish the right to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant may do this by conclusively: (1) negating one or more essential elements of his opponent's cause of action; or (2) proving each element of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). Official immunity is an affirmative defense, therefore DPS shouldered the burden to prove each of its elements. *Chambers*, 883 S.W.2d at 653.

Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

DPS's summary judgment motion is overlaid on it plea to the jurisdiction. This overlay, however, does not change the standard of review. In *Texas Dept. of Parks and Wildlife v. Miranda*, the court viewed the procedure for resolving an evidentiary based plea to the jurisdiction as mirroring that of a summary judgment motion under Rule 166a(c). 133 S.W.3d 217, 228 (Tex. 2004). The court explained, "[b]y requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* If there is no fact question on the

10

jurisdiction issue, the trial court will rule on the plea to the jurisdiction as a matter of law. *Id.* Likewise, reviewing jurisdictional determinations may require appellate courts to examine the evidence supporting a claim in the same *de novo* manner it reviews a summary judgment. *Id.* at 228.

## DPS Never Met its Initial Burden for Good Faith

Applying the summary judgment standard which requires us to review the evidence in a light most favorable to the non-movant, we conclude that DPS never met the initial showing that a reasonable officer under the same circumstances could have believed that the initiation of the pursuit was reasonable. In reaching this conclusion, we first explain our view of the summary judgment evidence.

Trooper Cruz appropriately outlined the facts supporting the "need" aspect for his decision, and Bonilla in our view does not raise any challenge to that evidence. Accordingly, we take as uncontroverted these facts supporting the need to apprehend the pickup:

- The pickup violated state law regarding unsafe lane changes.

- The pickup violated state law for posted speed limits, traveling as much as twenty miles an hour over the posted speed limit in a commercial district.

- The pickup violated state law for stopping at a red light.

- The combination of these violations in a quarter mile stretch of road (all in the presence of a marked DPS unit) raises a legitimate inference that the pickup created a risk to other motorists on the road.

- Officer Cruz had no opportunity to pull the vehicle over before the Magruder intersection and failing to pursue the pickup might have allowed it to evade arrest.

Bonilla did raise disputes on the "risk" side of the equation. Taking those uncontested portions of Trooper Cruz's affidavit, and joining them with the contested portions viewed in the light most favorable to the non-movant, the following is our view of the risk evidence:

- In daylight conditions, the roadway was dry, and the weather was clear.

11

- The traffic was moderate and as Trooper Cruz made the decision to enter the intersection, there were no vehicles directly ahead of him, or already in the intersection, nor were there any pedestrians.

- The cross traffic to Trooper Cruz's left was yielding, even though they had a green light (and thus had either seen the Trooper's flashing lights or were still startled from the pickup running the red light).

- Trooper Cruz had his lights flashing, but did not have his siren engaged.

- Trooper Cruz had an obstruction to his right side that prevented him from seeing all of the traffic in that direction.

- Trooper Cruz began accelerating his vehicle at least 99.9 feet before the stop line of the intersection, and continued to do so until one-half second before impact. At 99.9 feet from the intersection, he was traveling 39 miles per hour, and he reached 49 miles per hour before the last half second prior to impact.

- If Trooper Cruz slowed to check for cross traffic, he would have done so more than 99.9 feet back from the stop line at the intersection, or once he was already in the intersection.[5]

- Trooper Cruz did not see Bonilla's vehicle which was stopped and then proceeded into the intersection, but the record is unclear whether this because of the obstruction, or just simply by honest mistake.

Under this set of facts DPS was required to show that a reasonably prudent officer, under the same or similar circumstances, *could have believed* the need for this pursuit outweighed the risk of harm to the public. *Clark*, 38 S.W.3d at 581; *Wadewitz*, 951 S.W.2d at 466; *Chambers*, 883 S.W.2d at 656. We have no quibble with the Trooper's assessment of the need to detain the pickup. We conclude, however, that DPS has not presented any evidence that taking the risk

---

[5] We consider but reject the possibility that Trooper Cruz's claim that he slowed at the stop line might be a reference to the reduction in throttle in the last half second prior to impact. Simple math would show that to be incorrect. The last and greatest speed of the unit was 49 miles per hour. Given that speed, he traveled no less than 35.93 feet in the last half second prior to the collision. Objectively, we know that because at 49 m.p.h. a vehicle travels 258,720 feet in an hour (49 times 5280, the number of feet in a mile). In a minute, the same vehicle would travel 4,312 feet (258,720 divided by 60, the number of minutes in an hour). In a half second, the same vehicle would travel 35.93 feet (4,312 divided by 120, the number of half seconds in a minute). The impact occurred at a point 65 feet from the stop line at the intersection. It then follows that the Trooper did not reduce the throttle until he was already some thirty feet into the intersection.

12

assessment facts as the summary judgment record shows them to be, that a reasonable officer could have come to the same decision.

Trooper Cruz's affidavit states that he "weighed the risks versus the benefits" and concluded the risks were minimal compared to stopping the pickup. But in explaining the risks, he outlines and presumably relies on two facts that are in dispute. He avers that nothing was obstructing his view. He also assumes he was slowing as he entered the intersection.[6] His ultimate conclusion is tied to the facts that he claims. If those facts prove to be incorrect, and if they are material, the conclusion must fail as well. *See Green v. Alford*, 274 S.W.3d 5, 20 (Tex.App.--Houston [14th Dist.] 2008, pet. denied)(discounting expert's risk-need assessment when the expert assumed the truth of a material disputed fact); *Harris County v. Smyly*, 130 S.W.3d 330, 335 (Tex.App.--Houston [14th Dist.] 2004, no pet.)(disputed facts regarding amount of traffic, speed of police unit, and whether an open lane existed for police officer precluded reliance on expert and officer's claim of good faith); *cf. Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment."). Nor are we bound by Trooper Cruz's conclusory claims that he was acting in good faith. *Wadewitz,* 951 S.W.2d at 466. DPS presents no other summary judgment evidence that would show that a reasonable officer could have thought it appropriate to begin accelerating 99.9 feet before an intersection, when the view of at least some of the traffic to the cross street was blocked, and the vehicle's siren was not engaged.

---

[6] His affidavit states: "I cautiously proceeded into the intersection. I slowed and I was traveling approximately 35 m.p.h. into the intersection." His statement, which he incorporates into his affidavit, states "I yielded at the white line before crossing the intersection; I then scanned for traffic and clearance…. After I had scanned my surroundings, I proceeded through the intersection with emergency lights on while turning power on to the camera system."

Without any witness offering that opinion, we are unwilling to conclude as a matter of law that a reasonable officer might make that same calculation. We acknowledge a line of cases where courts have upheld an official's claim of good faith following an intersection collision during an emergency response. In none of those cases, however, is there the confluence of the officer failing to pause just before entering the intersection, not having a clear field of vision for cross traffic, and not providing an audible warning to surrounding motorist. *Cf. City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99-100 (Tex.App.--Houston [1st Dist.] 2008, no pet.)(finding good faith when the officer, while responding to house fire, had activated his emergency lights and siren, in addition to slowing before proceeding through the intersection); *Smith v. Janda*, 126 S.W.3d 543, 545-46 (Tex.App.--San Antonio 2003, no pet.)(evidence held insufficient to establish recklessness when ambulance driven to emergency had lights and sirens activated as it approached intersection, and it slowed before proceeded into intersection); *City of San Angelo Fire Dept. v. Hudson*, 179 S.W.3d 695, 700-01 (Tex.App.--Austin 2005, no pet.)(officer's affidavit stated that he was driving below the speed limit and significantly slowed at intersection to ten miles per hour before proceeding through it, all while having siren and lights activated supported good faith claim).

Certainly not every contradiction of an official's perception of events will undermine a good faith claim. In *Ytuarte*, for instance, the court of appeals had affirmed the denial of summary judgment in part because the non-movant had presented affidavit evidence from an independent witness that disputed one of the claims made by the pursuing officers. 229 S.W.3d at 319-20. The Texas Supreme Court reversed the court of appeals on that holding because the intermediate court never explained how the particular inconsistency in the summary judgment proofs impacted the good faith inquiry. The high court concluded its relevance was "not immediately apparent." *Id*. at 320.

Here, however, the contested issues of fact are whether Trooper Cruz paused before entering the intersection (as many a motorist has observed an emergency vehicle do), and whether he had a clear view of cross traffic. Both of these are presumptively important components of the risk equation. They bear directly on the level of risk to cross traffic, both as to the risk of accident and the severity of an accident. The balance is distorted further by the acknowledged lack of a siren. At least some motorists traveling from the Trooper Cruz's right could not see the trooper, just as he could not see them, because of the building. They would have no audible clue that the DPS unit was about to enter the intersection, going somewhere between 39 and 49 miles per hour. These factual issues change the need-risk balance and DPS must prove in the summary judgment context that given these disputes a reasonable trooper might have still have believed that is was appropriate to initiate the traffic stop.

In the heat of the moment an officer might well misapprehend an event, and courts should not punish them for doing so, otherwise an official might be reluctant to discharge his duties. *Telthorster v. Tennell*, 92 S.W.3d 457, 463 (Tex. 2002)(officer's mistaken belief that suspect had a weapon did not preclude good faith immunity). But nor do we read the Texas Supreme Court's jurisprudence as requiring a court to slavishly accept everything in an official's affidavit under the guise that it is what the official thought he or she saw. Because the summary judgment record, viewed in the light most favorable to Bonilla demonstrates that material factual assumptions which underpin Trooper Cruz's claim are disputed, we conclude that Trooper Cruz's assessment of the need-risk balance, which is the only evidence of that assessment, cannot support summary judgment.

Having concluded that DPS never met its initial burden to show good faith, we need not reach the second question of whether Bonilla raised a fact issue on whether no reasonable officer would have initiated the pursuit.

15

## Corroboration Requirement

Bonilla also argues in his supplemental briefing that as a matter of public policy, an officer's claim of good faith should be supported by more than the officer's own testimony. Rather, he contends that some corroboration should be required. Bonilla cites no authority directly supporting this contention and we have found none.

We decline to create such a standard for several reasons. First, the argument is a shade or phase of the argument Bonilla unsuccessfully advanced before the Texas Supreme Court. Bonilla there argued that an officer's claim of good faith could not be proved by the officer's own affidavit because the opinions of the officers were not "readily controvertible" as required by the summary judgment standard. *See* TEX.R.CIV.P.166a(f). The supreme court's footnote 23 appears to reject that claim. Second, we are confident that the discovery process can ferret out any disingenuous claims by officials that do not square with the objectively provable facts of the case. Finding no support for the corroboration requirement urged by Bonilla, we decline his invitation to invent one.

## CONCLUSION

We had previously overruled DPS's Issues One and Three and affirm those rulings for the reasons stated in our original opinion. We today overrule Issue Two because DPS has not presented conclusive evidence that a reasonable trooper, under the same or similar factual circumstances, could have believed that it was appropriate to enter the intersection as Trooper Cruz did here. We affirm the judgment of the trial court below.

October 12, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., dissenting

16