**Appellee's Motion for Rehearing Denied; Appellee's Motion for En Banc Reconsideration Granted; Memorandum Opinion and Judgment of December 21, 2018, Withdrawn; Reversed and Remanded and Majority and Dissenting En Banc Opinions filed October 29, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00811-CV

---

### MARIA CHRISTINA GOMEZ, Appellant

### V.

### THE CITY OF HOUSTON, Appellee

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-59953**

---

# E N   B A N C   M A J O R I T Y   O P I N I O N

A motorist was involved in a traffic collision with one of several City of Houston police officers responding to the scene of a robbery in progress. The motorist sued the City, alleging negligence. The City responded by filing a plea to the jurisdiction, asserting immunity from suit. The trial court granted the plea and dismissed the motorist's suit. After a panel of this court decided this appeal, the en

banc court voted to grant the City's Motion for En Banc Reconsideration, and the en banc court has reconsidered this appeal.

The motorist asserts various arguments as to why the trial court erred in granting the City's plea. We conclude that the City did not conclusively establish the good faith of the officer involved in the collision, and that a material fact issue exists as to whether that officer acted recklessly. Therefore, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Maria Christina Gomez was driving eastbound on Crosstimbers Road on a cold and rainy Christmas Eve morning. As she approached the intersection at Lockwood, the traffic light facing her turned green and she proceeded into the intersection. A City police car slid into the intersection and collided with Gomez's vehicle. According to Gomez, Bobby Joe Simmons, the officer who was driving the police car, was not using the police car's emergency lights or siren when his car collided with hers.

That morning Simmons was on patrol when he was dispatched to respond to a nearby armed robbery in progress. According to Simmons, an armed robbery is normally a Priority One call, but dispatch reduced this call to Priority Two due to the weather conditions. Simmons testified that as he responded to the robbery-in-progress call, he turned on his emergency lights but not his siren. Simmons explained that the Houston Police Department's policy for Priority Two calls normally requires a silent approach. Simmons further explained that an officer retains the discretion to use the emergency lights and siren on a Priority Two call when the officer deems it necessary and notifies the dispatcher. Simmons decided that he did not need to exceed the posted speed limit of 35 miles per hour to arrive safely and quickly at the robbery scene. As his patrol car approached the

2

intersection, Simmons looked down to increase the volume of his police radio. When he looked up, he was startled to see that the Crosstimbers traffic light had turned yellow. He pressed his brakes, but he was unable to stop his police car on the wet street, and the car slid into the intersection, where it collided with Gomez's vehicle.

Houston police officer Isaac Jefferson investigated the collision and prepared the investigation report. Jefferson noted in his report, among other things, that Simmons was responding to a robbery call when the collision occurred. Jefferson also stated in his report that Simmons was driving south on Lockwood without his emergency lights or siren engaged when the signal light changed from green to yellow. Jefferson then stated that Simmons "applied his brakes but because the roads were wet he was unable to stop." Finally, Jefferson determined that Simmons disregarded a stop-and-go signal and so was at fault in the collision.

During his deposition, Simmons testified that he received a letter of reprimand as a result of the collision. The reprimand letter notified him that he was at fault in the collision. Simmons also testified that he did not contest the fault determination because he already had admitted fault in the collision.

The City of Houston filed a "First Amended Plea to the Jurisdiction and Motion to Dismiss" (the "Jurisdictional Plea"), including as exhibits (1) a business-records affidavit containing Houston Police Department call slips associated with the robbery, (2) an affidavit of Simmons, (3) an affidavit of Jefferson, and (4) a document explaining Priority Two calls. Much of Jefferson's affidavit duplicates Simmons's affidavit. Like Simmons, Jefferson states in his affidavit that "Officer Simmons'[s] emergency lights and car headlights were on throughout this time." Jefferson then opined that "based on all the facts stated above, another reasonably prudent law enforcement officer, including myself, under the same or similar

3

circumstances could have believed that the need to quickly reach the incident scene outweighed any minimal risk of harm to others and that all of Officer Simmons's decisions and actions before the accident were justified and reasonable based on his perception of the facts at the time." Finally, Jefferson concluded that "based on all the facts stated above, Simmons should not have known or believed that his driving to reach the armed robbery in progress and then to assist in pursuing the suspect posed a high degree of risk of serious injury to others and that there is no way Officer Simmons did not care about the results of any risk of injury to others."

After Gomez filed suit against the City, the City filed the Jurisdictional Plea asserting that the trial court lacked jurisdiction over the claims because the City had not waived its governmental immunity. The City made two arguments in its Jurisdictional Plea. First, the City asserted that Simmons was protected by official immunity, which preserved the City's governmental immunity. Second, the City argued that it was immune because the emergency exception in the Texas Tort Claims Act (the "Act") barred any possible waiver of its governmental immunity. The trial court granted the City's plea and dismissed Gomez's lawsuit. This appeal followed.

In December 2018, a panel of this court reversed the trial court's judgment and remanded the case to the trial court for further proceedings, issuing a memorandum opinion authored by Justice Busby, in which Chief Justice Frost and Justice Boyce joined. The City filed a Motion for Rehearing and a Motion for En Banc Reconsideration. Under Texas Rule of Appellate Procedure 49.3, this court must deny the Motion for Rehearing because Justices Boyce and Busby are no longer on this court. *See* Tex. R. App. P. 49.3 (stating that "A motion for rehearing may be granted by a majority of the justices who participated in the decision of the case. Otherwise, it must be denied."). A majority of the en banc court voted to grant the

4

Motion for En Banc Reconsideration, and the en banc court has reconsidered this appeal. Today, the en banc court withdraws the memorandum opinion and judgment of December 21, 2018, and issues this En Banc Majority Opinion and the en banc court's judgment. Justice Jewell has authored an En Banc Dissenting Opinion, in which Justices Wise and Spain join.

## II. ISSUES AND ANALYSIS

### A. Standard of Review

In filing the Jurisdictional Plea, the City challenged the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's granting of the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In the Jurisdictional Plea, the City challenged the existence of jurisdictional facts; so, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence created a fact question as to the jurisdictional issue, then the trial court should have denied the Jurisdictional Plea. *See id.* at 227–28. But, if the relevant evidence was undisputed or failed to raise a fact question on the jurisdictional issue, then the trial court should have ruled on the Jurisdictional Plea as a matter of law. *Id.* at 228.

### B. The City's Failure to Establish Official Immunity as a Matter of Law

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under the facts of this case, the only possible waiver of the City's immunity from suit and liability is found in section 101.021 of the Act, which provides in relevant part:

5

A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B)  the employee would be personally liable to the claimant according to Texas law . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (West 2011).

The parties agree Gomez's claims arise from the use of a motor vehicle. They also agree that Simmons was acting within the scope of his employment when he responded to the dispatcher's call. One of the matters the parties dispute, which we address here, is whether Simmons "would be personally liable to the claimant[s] under Texas law." A second dispute, which we address in section C, below, is whether an exception to the section 101.021 waiver applies.

The City contends the evidence conclusively establishes that Simmons retained his official immunity because he responded to the robbery call in good faith. According to the City, that means Simmons could not be personally liable to Gomez according to Texas law, and the City retains its governmental immunity. Gomez asserts on appeal that the City failed to establish good faith as a matter of law because the City's proof of good faith presumed that Simmons activated his car's emergency lights, even though there is a fact issue on this point, and the City should have based its proof of good faith on Simmons not having activated his car's emergency lights.

Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of the defense. *See Green v. Alford*, 274 S.W.3d 5, 16 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc); *Belle*, 297 S.W.3d at 530. Under the official-immunity defense, a government employee may

6

be immune from a lawsuit that arises from the performance of the employee's discretionary duties in good faith, provided the employee was acting within the scope of the employee's authority. *Belle*, 297 S.W.3d at 530. As explained above, only good faith is in dispute.

In this context, a court must measure good faith against a standard of objective legal reasonableness, without regard to the police officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). To be entitled to summary judgment, the City must carry the burden to prove conclusively that a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he possessed at the time. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002). The City need not prove that it would have been unreasonable not to take these actions, or that all reasonably prudent officers would have taken the same actions. *See id.* Rather, the City must prove conclusively that a reasonably prudent officer, under the same or similar circumstances, *might* have reached the same decision. *See id.* That Simmons may have been negligent will not defeat good faith; this test of good faith does not inquire into "what a reasonable person *would have done,*" but into "what a reasonable officer *could have believed.*" *Id*. (internal quotations and citations omitted). The good-faith standard is analogous to an abuse-of-discretion standard that protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Texas Dept. of Public Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015) (per curiam) (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (per curiam)).

If the City met its summary-judgment burden, then to have raised a fact issue, Gomez must have done more than show that a reasonably prudent officer could have reached a different decision. *See id.* Instead, Gomez must have offered evidence

7

that no reasonable officer in Simmons's position could have believed that the facts were such that they justified Simmons's conduct. *See id.*

In this context, good faith depends on how a reasonably prudent officer could have assessed both the *need* to which the officer was responding and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Wadewitz*, 951 S.W.2d at 467. The "need" aspect of the balancing test refers to the urgency of the circumstances requiring police intervention. *Id.* In the context of an emergency response, need is determined by factors such as: (1) the seriousness of the crime or accident to which the officer is responding; (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and (3) what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The "risk" aspect refers to the countervailing public-safety concerns: (1) the nature and severity of the harm the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the original emergency); (2) the likelihood that any harm would occur; and (3) whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

To prevail, a governmental defendant's proof must sufficiently address these need/risk factors. *Telthorster*, 92 S.W.3d at 462. An expert giving testimony regarding good faith must discuss what a reasonable officer could have believed based on the officer's perception of the facts at the time of the event, and this discussion must be substantiated with reference to both the need and risk aspects of the balancing test. *See Wadewitz*, 951 S.W.2d at 466–67; *Belle*, 297 S.W.3d at 531. In addition, the facts of the case may require the expert to provide a continuing assessment of the need and risk factors because emergency responses and police pursuits may involve rapidly changing circumstances. *Belle*, 297 S.W.3d at 531. A

8

reviewing court analyzing these factors first must determine whether the governmental unit met its initial burden to prove conclusively the police officer's good faith. *Id.* Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *Id.*

When faced with "an official traffic-control device," a motorist is required to stop and "may proceed when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." Tex. Transp. Code Ann. § 545.151(a)(2) (West 2011). Police officers are authorized to violate traffic laws in certain circumstances, but they may do so only when it is safe. *See id.* § 546.001(2) (authorizing police officer to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation.").

We turn first to the question of whether the City met its initial burden to prove conclusively Simmons's good faith. As this court has held, an opinion that a police officer acted in good faith does not conclusively establish good faith when the opinion is reached "by assuming the truth of disputed facts." *Green*, 274 S.W.3d at 20; *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *5 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.).

Simmons stated in his affidavit, "I believe that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that my actions were justified based on my perception of the facts at the time. . . ." But the actions to which Simmons refers include his driving with his car's overhead emergency lights activated. Jefferson offered his opinion that "based on all of the facts stated above, another reasonably prudent law enforcement officer, including myself, under the same or similar circumstances could have believed that . . . all Officer Simmons'[s] decisions and actions before the accident were justified and

9

reasonable based on his perception of the facts at the time." One of the facts on which Jefferson based this opinion is that the overhead emergency lights of Simmons's patrol car were on at all relevant times.

Thus, the City's evidence of good faith assumes the truth of a disputed fact — that Simmons was using his overhead emergency lights as he approached the Crosstimbers intersection. Simmons testified that he used overhead emergency lights continuously from the beginning of his response to the armed-robbery call, but the record contains other evidence that he did not do so. This evidence includes (1) Gomez's affidavit testimony that Simmons was not using his vehicle's overhead emergency lights and (2) Jefferson's determination in his investigation report that Simmons was not using his vehicle's overhead emergency lights before the collision.

Neither Simmons nor Jefferson proffered a good-faith opinion based on a need-versus-risk analysis under the alternative scenario that Simmons was not using his car's overhead emergency lights as he approached the Crosstimbers intersection. No witness testified that, presuming Simmons did not use his car's overhead emergency lights, a reasonably prudent police officer, under the same or similar circumstances, could have believed Simmons's actions were justified based on the information the officer possessed at the time. Because no witness testified that the standard for good faith was satisfied if Simmons did not use his car's overhead emergency lights, we conclude the City did not demonstrate conclusively that Simmons acted in good faith. *See Green*, 274 S.W.3d at 20 (concluding that defendant did not conclusively demonstrate that firefighter acted in good faith where defendant's expert's good-faith opinion assumed the truth of disputed facts); *Tex. Dep't of Public Safety v. Bonilla*, 509 S.W.3d 570, 578–80 (Tex. App.—El Paso 2016, pet. denied) (concluding that governmental entity did not present any evidence that, taking the risk assessment facts as the summary-judgment record showed them

10

to be, a reasonable officer could have come to the same decision); *Ellis*, 2015 WL 3424732, at \*5–7 (concluding that the governmental entity did not conclusively demonstrate that the police officer acted in good faith because the entity's witnesses assumed the truth of the disputed fact that the officer was using his siren as he approached the intersection); *Collins v. City of Houston*, 14-13-00533-CV, 2014 WL 3051231, at \*6 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (holding opinions failed to establish good faith because they "relie[d] on assumptions that are not supported by the record"); *Harris Cnty. v. Smyly*, 130 S.W.3d 330, 335 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding that the governmental entity did not conclusively demonstrate that deputy sheriff acted in good faith in case in which entity's expert witnesses did not base their good-faith opinions on the disputed facts in the light most favorable to the non-movants); *Junemann v. Harris Cnty.*, 84 S.W.3d 689, 694–95 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that when officer's failure to activate lights was disputed, testimony that did not evaluate risks associated with failure to activate lights was insufficient to establish good faith conclusively).[1]

The City cites the Supreme Court of Texas's opinion in *Texas Dept. of Public Safety v. Bonilla*, a case in which a Texas Department of Public Safety trooper ran a red light and caused a car accident in which Merardo Bonilla sustained injuries. *See* 481 S.W.3d 640, 642 (Tex. 2015) (per curiam). The trial court denied the Texas Department of Public Safety's plea to the jurisdiction, and the court of appeals

---

[1] *Cf. City of San Angelo v. Hudson*, 179 S.W.3d 695, 700–01 (Tex. App.—Austin 2005, no pet.) (holding good faith conclusively proven where undisputed evidence established fire truck was using emergency lights, siren, and air horn as it approached intersection and the driver testified he was driving below speed limit and considered stopping at intersection but, after looking both ways and observing that traffic had yielded to his fire truck and evaluating need for a prompt response to emergency, decided not to stop completely but instead to slow down significantly before entering intersection).

affirmed, giving "decisive weight to evidence that a reasonably prudent officer could have made a different decision." *Id*. at 643.

The supreme court reversed, concluding that the court of appeals had applied an incorrect legal standard. *See id*. at 642–43. The high court stated that "[t]he relevant test . . . is not whether the officers assessed the needs and risks differently, but whether no reasonable prudent officer could have assessed the need and risks as the [law-enforcement officer] did in this case." *Id*. at 643. The supreme court noted that evidence a reasonable law-enforcement officer could have resolved the need/risk analysis differently does not overcome competent evidence of good faith. *Id*. at 644. Emphasizing that the proper focus should be on what a reasonable officer *could have believed*, the high court stated that the determinative inquiry is whether any reasonably prudent officer possessing the same information could have determined the trooper's actions were justified. *See id*. at 644.

The supreme court also addressed the court of appeals's alternative holding that the governmental entity's summary-judgment evidence was not competent to establish good faith because it failed to address whether the trooper considered alternative courses of action as an essential part of the need/risk balancing inquiry. *See id*. Evidence of an officer's good faith must be substantiated with facts showing the officer assessed both the need to apprehend the suspect and the risk of harm to the public. *Id*. Evidence does not provide a suitable basis for determining good faith if the evidence fails to address several factors the high court has identified as bearing on the need/risk analysis, including the availability of any alternative action. *Id*. Good faith is not necessarily negated if the evidence reveals that the officer had a viable alternative, but the evidence nevertheless must show the officer assessed the availability of any alternative course of action. *Id*.

The court of appeals in *Bonilla* held that the governmental entity's summary-judgment evidence was not competent to prove good faith because it did not establish that the trooper considered whether any alternative course of action was available to stop the speeding truck. *Id*. at 645. The supreme court disagreed with the court of appeals's characterization of the evidence. *Id*. The high court stated that "[m]agic words are not required to establish that a law-enforcement officer considered the need/risk balancing factors." *Id*. The supreme court held that the governmental entity's summary-judgment proof was adequate to address the alternative-options element of the need/risk analysis, even though it did not "elaborately discuss[]" this element. *Id*. The high court noted that the governmental entity's summary-judgment evidence detailed the specific circumstances giving rise to pursuit and emphasized the potential danger to the public due to the subject vehicle's erratic and unsafe activity. *Id*. The high court concluded that although the trooper did not explicitly address alternatives to pursuit, the trooper implicitly discounted the viability of other alternatives based on his stated belief that immediate action was necessary and his inability to identify the driver of the speeding vehicle at that time. *See id*. The supreme court stated that the trooper's failure to expressly identify alternatives that may have been considered did not make the evidence deficient and that the court of appeals erred in holding otherwise. *See id*.

The high court in *Bonilla* did not address any issue as to whether an opinion regarding the trooper's good faith assumed the truth of disputed facts. *See id*. at 643–45. Thus, this precedent is not on point in today's case on the issue of whether the evidence conclusively establishes good faith because in reaching their respective opinions, both Jefferson and Simmons assumed the truth of disputed facts. *See id*. On remand in *Bonilla*, the court of appeals again affirmed the trial court's order, this time on the basis that the trooper based his opinion concerning good faith on the

13

truth of material facts that the parties disputed. *See Bonilla*, 509 S.W.3d at 578–80. The court of appeals concluded that the governmental entity did not present any evidence that, taking the risk assessment facts as the summary-judgment record showed them to be, a reasonable officer could have come to the same decision. *See id.* at 578

The City does not dispute that the record contains a fact issue as to whether Simmons used his car's overhead emergency lights, but the City argues that this fact issue is not material because, according to the City, even if Simmons decided not to use his car's overhead emergency lights, this decision "was reasonable for the same reasons given for not using the siren." Simmons testified that he did not activate his car's siren because he "believed that alerting the suspect of [his] presence would cause the suspect to evade apprehension, and because [his] training and experience as a police officer would allow [him] to drive to the scene as quickly, safely, and responsibly as possible under the conditions and circumstances." Jefferson mentioned these same reasons in his affidavit, and he added a third reason — that "the moderate traffic minimized the need to alert others of [Simmons's] presence." Neither witness testified that if Simmons had decided not to use the car's overhead emergency lights, that decision would have been reasonable for any of the foregoing reasons, nor did any witness testify that the standard for good faith would be satisfied if Simmons did not use his car's overhead emergency lights. This court is not an expert testifying in this case, and we may not fill gaps in an expert's testimony. *See Plunkett v. Christus St. Michael Health Sys.*, No. 06-16-00010-CV, 2016 WL 7335872, at *5 (Tex. App.—Texarkana Dec. 19, 2016, pet. denied) (mem. op.).

The City cites *City of San Antonio v. Ytuarte* for the proposition that a fact issue does not preclude a determination that the evidence conclusively proves an officer's good faith unless the court explains how the fact issue affects the good-

14

faith analysis. *See* 229 S.W.3d 318, 320 (Tex. 2007).  In today's case, the fact issue bears on the decisions that Simmons made that are the subject of the good-faith analysis. Simmons and Jefferson each based his opinion on good faith in part on Simmons's use of his car's overhead emergency lights, thus indicating that each thought that this issue was material to the good-faith determination.  If Simmons did not use his car's overhead emergency lights, that decision presumably would bear directly on the level of risk to drivers of cars travelling on Crosstimbers Road.  *See Bonilla*, 509 S.W.3d at 579–80 (distinguishing the *Ytuarte* case).  Thus, the *Ytuarte* case is not on point.  *See id*.

Because the City did not conclusively establish Simmons's good faith, we hold the trial court erred to the extent it granted the City's Jurisdictional Plea on the ground that the City's governmental immunity had not been waived under section 101.021.  *See Green*, 274 S.W.3d at 20; *Bonilla*, 509 S.W.3d at 578–80; *Ellis*, 2015 WL 3424732, at *5–7; *Collins*, 2014 WL 3051231, at *6; *Smyly*, 130 S.W.3d at 335.

C.    **Material Fact Issue on Whether the Emergency Exception Applies**

Liberally construing Gomez's brief, Gomez asserts that the trial court erred to the extent it granted the City's Jurisdictional Plea based on the emergency exception to section 101.021's waiver of immunity because the evidence raises a fact issue as to whether Simmons acted recklessly.  In response, the City argues that the exception applies because it established as a matter of law that Simmons did not act recklessly. We disagree with the City's position because the evidence raises a material fact issue as to whether Simmons acted recklessly or with conscious indifference to the safety of others.

The Act includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances under which a waiver of immunity does not apply.  *City of San*

*Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). One of the exceptions addresses emergency scenarios. Under this exception, the Act "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2) (West 2011). The plaintiff has the burden of presenting some evidence that the emergency exception does not apply. *See Ellis*, 2015 WL 3424732, at *7.

Under section 546.005 of the Texas Transportation Code, a driver of an emergency vehicle is not relieved of "the consequences of reckless disregard for the safety of others." Tex. Transp. Code Ann. § 546.005 (West 2011); *see Ellis*, 2015 WL 3424732, at *7. The emergency exception does not apply if the operator of the emergency vehicle acted recklessly by an act or omission the operator knew or should have known posed a high degree of risk of serious injury. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998); *Green*, 274 S.W.3d at 22–23; *Ellis*, 2015 WL 3424732, at *7. Thus, if the summary-judgment evidence raises a fact issue as to whether Simmons acted recklessly, then the trial court erred to the extent it granted the Jurisdictional Plea based on the emergency exception. *See Ellis*, 2015 WL 3424732, at *7–8.

Simmons's affidavit shows that he subjectively was aware of the risks created when a police officer responds to an emergency call for service.[2] Simmons also was aware of the rainy weather and wet streets, but he did not reduce his speed below the

---

[2] For example, Officer Simmons stated in his affidavit that he "considered both the need to immediately find and apprehend the robbery suspect and the risk of harm to other drivers and pedestrians from my driving there as quickly as possible." Officer Simmons also stated that he "was also careful to watch for others on the roadway while driving en route."

posted speed limit to mitigate these risks. The evidence also demonstrates that Simmons chose to (1) look down and away from the road as he approached the intersection and (2) refrain from using his patrol car's siren. Further, there is a factual dispute regarding whether Simmons was using his car's overhead emergency lights as he approached the Crosstimbers intersection. Finally, the evidence shows that Simmons applied his brakes but, because the streets were wet, he was unable to stop his patrol car before the intersection, and his car slid into the path of Gomez's car.

Taken together, this evidence could support a finding that Simmons acted recklessly during his response to the armed-robbery call. Specifically, Simmons decided to (1) not slow his speed below the posted speed limit to compensate for the wet conditions, (2) not use his patrol car's emergency lights and siren, and (3) not maintain visual contact with the road as he approached the intersection. *See Green*, 274 S.W.3d at 29 (concluding firefighter's failure to wear required corrective lenses and decision not to use siren as he drove fire engine into crossing lane of traffic he could not see were factors supporting finding firefighter was reckless); *City of Missouri City v. Passante*, No. 14-09-00634-CV, 2010 WL 2998777 at *8 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (mem. op.) (affirming trial court's denial of plea to jurisdiction because there were fact issues as to whether police officer was reckless, including whether officer (1) was using his emergency lights and siren and (2) could see cross-traffic at intersection); *Belle*, 297 S.W.3d at 535 (affirming trial court's denial of plea to jurisdiction because there was fact issue as to whether police officer was reckless when he responded to emergency call by traveling twice the speed limit without operating emergency lights or siren). Evidence of this combination of decisions could support a finding that Simmons acted recklessly.

The City contends on appeal that two cases support applying the emergency exception, thereby preserving the City's governmental immunity. Yet, unlike this case, those cases both involved undisputed evidence that the officers in the emergency vehicles were using their emergency lights and sirens while responding to an emergency call. *See Tex. Dep't of Public Safety v. Sparks*, 347 S.W.3d 834, 841 (Tex. App.—Corpus Christi 2011, no pet.) (reversing trial court's denial of governmental entity's plea to the jurisdiction in part because evidence was undisputed that the police officer "was responding to an emergency call with his emergency lights and siren activated."); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same). In light of this crucial factual difference, we conclude that neither *Sparks* nor *Kuhn* supports the trial court's decision to grant the City's Jurisdictional Plea.

The trial court erred to the extent it granted the City's Jurisdictional Plea based on the emergency exception to section 101.021's waiver of immunity because the record shows a material fact issue as to whether Simmons acted recklessly. *See Green*, 274 S.W.3d at 26–27; *Passante*, 2010 WL 2998777 at *8; *Belle*, 297 S.W.3d at 534–35.

### III. Conclusion

The City did not conclusively establish Simmons's good faith, and a material fact issue exists as to whether Simmons acted recklessly.[3] Therefore, we reverse the trial court's judgment and remand the case to the trial court for further proceedings

---

[3]We need not and do not reach Gomez's arguments that the affidavits the City attached to the Jurisdictional Plea contain substantive defects.

consistent with this opinion.


/s/    Kem Thompson Frost
Chief Justice


Chief Justice Frost authored the En Banc Majority Opinion, in which Justices Christopher, Bourliot, Zimmerer, Hassan, and Poissant joined. Justice Jewell authored an En Banc Dissenting Opinion, in which Justices Wise and Spain joined.